JOHN T. FURLONG, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 104844.    Promulgated October 14, 1941.

*Jesse R. Fillman, Esq.*, for the petitioner.
*Meade C. Patrick, Esq.*, for the respondent.

### OPINION.

MURDOCK: The Commissioner determined a deficiency of $453.08 in income tax of the petitioner for 1937. The issue for decision is whether the petitioner is entitled to a deduction of $1,706.08, representing $1,500 paid in settlement of a Federal income tax claim against the Barnsdall Class A Stock and Warrant Syndicate, and $206.08 paid to attorneys in that settlement. The facts have been stipulated and the stipulation is adopted as the findings of fact.

The petitioner is an individual who filed his return for 1937 with the collector for the third district of New York. He was a participant in Barnsdall Class A Stock and Warrant Syndicate, hereinafter called the syndicate. There were about 27 participants. They were called upon to pay a total of about 40 percent of their subscriptions during the life of the syndicate. Those funds were used to margin the syndicate account with brokers. The syndicate was formed in November 1927 by Hornblower & Weeks, a brokerage firm, the original syndicate managers, to trade in Barnsdall Corporation class A stock and stock purchase warrants and in no other security. The life of the syndicate was extended to March 15, 1929, but was actually terminated on January 2, 1929.

Purchases and sales of large quantities of the stock and warrants were made. A profit of $48,261.74 was realized in 1927 and one of $4,359,473.97 in 1928. A total net profit to subscribers was realized in the amount of $4,338,666.01 after deducting expenses. A partial distribution was made in 1928 and a final distribution was made on January 2, 1929.

The petitioner reported his profits in 1928 and 1929 as he received them. The Commissioner held that all were taxable in 1928. A settlement of that difference was reached whereby the Commissioner recognized the syndicate as a joint venture, all the profits of which were taxable when distributed. The Commissioner sent a notice of

deficiency to the syndicate manager late in 1934 advising that he had determined a deficiency of $436,383.75 and a penalty of $109,095.94 for 1928 upon the theory that the syndicate was an association taxable as a corporation. He later sent transferee notices to the participants. Petitions were filed with the Board. The syndicate's case was settled by a lump sum payment of $138,000 and decisions were entered for the petitioners in the transferee cases. The payment of $138,000 was in settlement of all taxes, interest, and penalties. The Board entered a decision that the taxes, inclusive of interest, of the syndicate for 1928 were in the amount of $138,000 and there was no penalty. The collector recorded the $138,000 as tax of $92,155.70 and interest of $45,844.30.

The participants contributed the $138,000 for the settlement and also paid the attorneys who handled the matter. The petitioner paid $1,500 in 1937 as his share of the $138,000 and $206.08 as his share of the fees. He filed all of his returns on a cash basis. He claimed a deduction of $1,706.08 on his return for 1937. The Commissioner disallowed the deduction.

The petitioner contends that the amounts which he was required to pay in 1937 are deductible as ordinary and necessary expenses paid in the taxable year in carrying on a trade or business within section 23 (a), as losses incurred in a trade or business under section 23 (e) (1), or as losses incurred in a transaction entered into for profit under section 23 (e) (2) of the Revenue Act of 1936. The record does not show that the petitioner was engaged in any trade or business. Therefore, neither 23 (a) nor 23 (e) (1) is applicable.

But the amounts were deductible as losses under section 23 (e) (2), upon authority of *W. R. Hervey*, 25 B. T. A. 1282. Hervey invested $100,000 in a syndicate in September 1926 for the purpose of buying stock of the Julian Petroleum Corporation. The petitioner received a profit from the transaction in 1926 and a further profit in 1927, when the syndicate was liquidated. Both years were before the Board, which held that the profit realized in each year was taxable income of that year. Receivers of the Julian Petroleum Corporation threatened to sue Hervey in 1927 for treble the amount of his profits, charging the syndicate had violated the usury laws. The petitioner, in order to avoid that suit, paid over all of his profits to the receivers in 1927. The Board held that the petitioner sustained a deductible loss in 1927 of the amount of the profits paid over to the receiver in settlement of the claims. The Board, in allowing the loss under section 214 (a) (5) of the Revenue Act of 1926, which corresponds to 23 (e) (2) of the Revenue Act of 1936, stated:

\* \* \* Admittedly, the petitioner's investment in the pool was a transaction entered into for profit. It seems to us, too, that the compromise settlement with the trustees was directly related to this transaction. Certainly, the loss was not a personal loss in the sense that it was disassociated from any business trans-

action, nor did it result from any patently wrongful and extrinsic act on the part of the petitioner such as perjury (see *Sarah Backer et al., Executors*, 1 B. T. A. 214). The petitioner's payment to the trustees was in settlement of an alleged civil liability which was predicated upon the very substance of the transaction upon which the profits were computed. * * *

The Board further stated:

* * * the tax liability for each taxable year must be determined upon the basis of the transactions occurring within the year (see *Florence B. Fawsett*, 23 B. T. A. 1148), and although we have both taxable years before us, we do not deem it proper, for tax purposes, to hold that the net result of the transactions was neither gain nor loss to the petitioner. He realized gains in both taxable years, and sustained a loss in 1927; he should be taxed accordingly.

The present case is not distinguishable. This petitioner invested in the syndicate and received taxable income from the investment which he reported and on which he paid the tax in prior years. He was called upon in 1937 to make certain additional contributions to the syndicate to pay alleged taxes and interest owed by the syndicate. The Commissioner was holding the petitioner liable as a transferee for the payment of those taxes and interest. The tax controversy arose out of the profitable transaction. The result of the transaction in prior years had been a profit, but the result in 1937 was a loss. That loss is deductible in 1937. *W. R. Hervey, supra.*

The Commissioner has cited the cases of *O. B. Barker*, 3 B. T. A. 1180; *Benjamin Paschal O'Neal*, 18 B. T. A. 1036; and *Sigmund Spitzer*, 23 B. T. A. 776, in support of his contention that the amounts paid by the petitioner in 1937 merely served to reduce the taxable income for 1928 and 1929 and did not represent loss or other deductions for 1937. The facts in the *Barker* case were somewhat similar to the facts in the present case and the Board held that the payment in the later year reduced the taxable income of the prior years in which the profits were distributed. The facts in the *O'Neal* case were also somewhat similar and the Board held that the amount paid in 1922 as additional taxes of a corporation was not a loss in that year, but simply reduced the distribution received from the corporation in a prior year when it liquidated. The *Spitzer* case is not similar, but the Board there reiterated statements made in the above two cases. The *Barker* and *O'Neal* cases must now be regarded as overruled by the later decision of the Supreme Court in *North American Oil Consolidated* v. *Burnet*, 286 U. S. 417. Receipts from oil production were paid to the taxpayer in the latter case in 1917. The Federal Government had instituted a suit to obtain possession of the property. The suit was concluded in 1922 unfavorably to the Government. The amounts received by the taxpayer in 1917 were held to be income for that year, when they were received under a claim of right and without restriction as to their use, even though there was a controversy about them and they might later have to be restored. The Court said: "If in 1922

the Government had prevailed, and the company had been obliged to refund the profits received in 1917, it would have been entitled to a deduction from the profits of 1922, not from those of any earlier year. Cf. *Lucas* v. *American Code Co., supra.*" See also *Schramm* v. *United States*, 36 Fed. Supp. 1021. Likewise, the holding of the Board in the *Hervey* case is contrary to its holding in the earlier cases relied upon by the Commissioner.

The parties have argued strenuously on the subject of whether or not the syndicate was an association taxable as a corporation, the Commissioner contending that it was an association taxable as a corporation and the petitioner arguing that it was not. It was taxable as a corporation or else was to be treated for tax purposes as a partnership. See section 1001(a)(2) and (3). The parties have not demonstrated why decision of that question is necessary in the present controversy. The same question was present and was not decided in the *Hervey* case. We see no necessity for deciding it here.

*Decision will be entered under Rule 50.*