The **NATIONAL LIFE AND ACCIDENT INSURANCE COMPANY**, Plaintiff,

v.

**UNITED STATES** of America, Defendant.

Civ. A. No. 3304.

United States District Court Middle District Tennessee, Nashville Division.

July 21, 1965.

As Corrected July 27, 1965.

Walter M. Robinson, Jr., and James R. Tuck, Associate General Counsel, National Life & Accident Ins. Co., Nashville, Tenn., for plaintiff.

George A. Hrdlicka, Tax Division, Department of Justice, Washington, D. C., and James F. Neal, U. S. Atty., Nashville, Tenn., for defendant.

WILLIAM E. MILLER, Chief Judge.

Plaintiff taxpayer qualifies as a life insurance company under provisions of the Internal Revenue Code (Sections 801 et seq. of the 1954 Code) which impose upon such companies a plan of taxation substantially different from that imposed upon individual and corporate taxpayers generally. This action is to recover income taxes alleged to have been erroneously collected under such plan for the tax year 1957. The total recovery sought is $29,332.75 plus interest. The Government has conceded that plaintiff is entitled to a refund of $7,361.68 plus interest at the per annum rate of six per cent, but contests plaintiff's right to recover the balance. Plaintiff's claim for the balance arises out of the redemption prior to maturity of certain United States bonds.

An identical claim for tax refund has been presented in another district court by two other life insurance companies. That court denied any recovery. Equitable Life Ins. Co. and Bankers Life Co. v. United States, D.C., 232 F.Supp. 150 (S. D.Iowa 1964). The Court of Appeals of its circuit affirmed. 340 F.2d 9 (8th Cir. 1965). This Court reaches substantially the same result but for entirely different reasons.

The bonds in question are of two series, 2½% Treasury Bonds, Investment Series A, and 2½% Savings Bonds, Series G. Treasury Department Circulars applicable to each series and the bonds themselves provide that full face value cannot be obtained upon redemption unless the bonds are held to maturity. A table on each bond sets out fixed redemption values which vary with the length of time the bond is held, full face value not being attained until maturity. For example, the redemption value of a savings bond with a face value of $5,000 varies from a low of $4,735 during the fourth year after issue to a high of $5,000 at maturity twelve years after issue. The redemption value of a similar investment bond which matures in eighteen rather than twelve years varies from a low of $4,634 to a high of $5,000 at maturity. With both series of bonds interest is paid semi-annually at the per annum rate of 2½%.

In 1957 plaintiff presented for redemption prior to maturity bonds of both series which it had purchased from the Treasury Department in prior years. All of the bonds had been purchased for face value. Plaintiff received less than face value upon redemption in accordance with the redemption value tables discussed above. The total amount by which face value exceeded redemption value for all of the bonds so redeemed in 1957 was $286,120.

A cash basis taxpayer, plaintiff did not reflect these bond redemptions in the computation of its income tax liability for 1957 at the time that it prepared its original return. It now claims the right to do so to the full extent of the $286,120 on the basis of statements in Treasury Department circulars that the difference between face and redemption value is a refund of interest previously paid. The pertinent language cited which appears verbatim in the offering circulars for both bond series is as follows:

> "A table of redemption values appears on each bond, and the difference between the face amount of the bond and the redemption value fixed for any period represents an adjustment (or refund) of interest."

This statement is amplified in the circular cited which sets out the regulations governing the investment series bonds as follows:

> "Full advantage of interest at the rate specified may be secured only if the bond is held to maturity. If the bond is redeemed before maturity, the difference between the face or full maturity value and the current redemption value then payable in accordance with the table printed on each bond will represent an adjustment of interest to the rate appropriate for the shorter term, as set forth in the table attached to the circular announcing the offering of the bonds."

Tables attached to the offering circulars set out the per annum interest rate (captioned "Investment Yield") resulting from each redemption value. For both series of bonds the resulting interest rate is graduated from an initial low of 0.1%, reaching 2½% at maturity.

These provisions clearly indicate that the redemption value tables were an integral part of the agreed plan of compensation for the use of the plaintiff's and other bondholders' money. The varying redemption values were the means selected to adjust the per annum interest rate for the length of time the bonds were held. It is not at all unusual for interest rates to be dependent in part upon the length of time for which capital is used and this practice of the financial world has been recognized by the courts in income tax litigation. E. g., Pattiz v. United States, 311 F.2d 947 (Ct.Cl. 1963); Equitable Life Assurance Society of United States v. United States, 181 F.Supp. 241 (Ct.Cl.1960). Thus, the Court is of the opinion that upon redemption prior to maturity plaintiff did not incur a loss on the bonds themselves but did indeed refund a portion of the interest it had previously received. This interpretation is identical to that of the Internal Revenue Service rendered over twenty years ago in a ruling under section 23(e) of the 1939 Code (section 165

(c) of the 1954 Code), I.T. 3504, 1941–2 Cum.Bull. 93:

> "[U]pon such a redemption before maturity, although there is for the sake of convenience paid over to the bondholder only the net difference, he in effect or constructively receives the full face amount of the bond and simultaneously refunds previously realized interest to the extent of the difference between the face amount of the bond and the net amount he actually receives at the time of the redemption.
>
> \* \* \* \* \* \*
>
> "Accordingly, it is held that, in so far as the bond itself is concerned, a purchaser of such a bond has no gain or loss, either ordinary or capital upon its redemption."

Under this construction of the contract between the Treasury Department and the bondholders, plaintiff was paid interest at the per annum rate of 2½% subject to the condition subsequent that the bonds be held to maturity. This conclusion is also in accord with the interpretation of the Internal Revenue Service contained in the ruling cited above:

> "[T]he obligation on the part of the bondholder to refund, in the event of redemption of the bond before maturity (except in certain cases upon death), a certain portion of the interest previously paid to him is a condition subsequent in determining whether he was entitled to receive and use as his own such interest payments."

If this condition subsequent is not fulfilled and a bond is surrendered prior to maturity, a lower per annum interest rate becomes applicable and the bondholder is contractually obligated to repay the difference between what he is entitled to retain at the resulting lower rate and what he has received at the higher 2½% rate.

This ruling of the Internal Revenue Service not being applicable to life insurance companies for reasons which will be discussed below, the Government in

this action contends that the repayment of previously received interest is not recognizable for income tax purposes because such repayment was voluntary, the taxpayer being under no obligation to present the bonds for redemption prior to maturity. It is on this ground that the District Court for the Southern District of Iowa denied recovery. Equitable Life Ins. Co. and Bankers Life Co. v. United States, supra.

The only authority cited in the present action for this proposition is a decision by the Court of Appeals of this circuit, United States v. Simon, 281 F.2d 520 (6th Cir. 1960). In addition to Simon, the Iowa District Court relied upon Crellin's Estate v. Commissioner, 203 F.2d 812 (9th Cir. 1953) and Grandview Mines, 32 T.C. 759 (1959). All three of these decisions are clearly distinguishable from the present action. Simon involved rental income the refund of which the Court of Appeals recognized had no legitimate business purpose but was designed solely to obtain a tax advantage for the lessors and/or the lessee, a corporation wholly owned by the lessors. Crellin's Estate involved the payment of dividends by a corporation under the mistaken belief that doing so would reduce its tax liability and the repayment of such dividends by the shareholders upon discovery of the mistake. Both of these decisions involved refunds which clearly had no legitimate business purpose but rather served tax manipulation ends. They do not require a finding that the repayments of interest in the present action were made "voluntarily" as they define that term merely because there was no legal obligation to surrender the bonds before maturity. It is not contended here that the surrender of the bonds was not a bona fide transaction. As a result of its decision to surrender the bonds before maturity, plaintiff taxpayer became contractually obligated to repay a portion of the interest it had previously received. The total amount so repaid was but a small percentage of the value of the bonds surrendered and the tax benefit which plaintiff now seeks is in

turn but a small percentage of the amount repaid. Such repayment does not fall within the definition of "voluntary" established by Simon and Crellin's Estate.

Nor does Grandview Mines alter the result. The taxpayer there had received income in one year under a contract which entitled it to 50% of the net income derived from the operation of its mines. The following year the taxpayer entered into a new contract in which its share of the profits was reduced to 46½%. This new contract was made effective as of the first of the preceding year. Thus, in accordance with its terms, taxpayer became obligated to "repay" the difference between the amount it had received the previous year at the 50% rate and the amount it would have received at the 46½% rate. The original contract under which Grandview Mines received the income which it later "repaid" did not impose upon the right to retain it any condition subsequent which necessitated repayment as in the present case, but rather such "repayment" was made pursuant to the terms of an entirely new contract.

■ Being of the opinion, therefore, that plaintiff's repayment of previously received interest income was not "voluntary" as that term has been applied in tax litigation and is entitled to recognition for tax purposes, the issue remaining before the Court is the treatment to be accorded it.

■ To the extent that interest was received in 1957 and a portion thereof refunded in that year when the bonds were redeemed, no particular problem is presented. When income is received and repaid all within the same tax year, the taxpayer merely reduces its gross income by the amount of the repayment, reporting only the net amount retained. United States v. Merrill, 211 F.2d 297 (9th Cir. 1954); Crellin's Estate v. Commissioner, supra at 814 n. 1; 2 Mertens § 12.103 at 325–326.

"[I]t is recognized by the great weight of authority that where income received in one year is returned

before the close of the year, it is to be treated as a readjustment of the rights of the parties and only the net amount finally agreed upon need be reported as income for the year." Treusch, The Claim of Right Doctrine—Suggested Methods of Escape in Mistake Cases, 7 Inst. on Fed. Taxation 1427, 1428 (1949).

The treatment to be accorded interest received in years prior to 1957, however, is not so easily determined. It is complicated substantially by the application of that body of tax law which has become known as the "claim of right" doctrine to the unique plan of taxation imposed upon life insurance companies.

The claim of right doctrine originated with the Supreme Court decision of North American Oil Consolidated v. Burnet, 286 U.S. 417, 52 S.Ct. 613, 76 L.Ed. 1197 (1932). It has two major features. One is the requirement established in North American Oil that income must be reported in the year in which it is received under a claim of right without restriction as to its use rather than in the year in which final determination is made of the right to retain it. The second is the requirement orginating in dictum in North American which was picked up by lower courts and later affirmed by the Supreme Court in United States v. Lewis, 340 U.S. 590, 71 S.Ct. 522, 95 L.Ed. 560 (1951) that the repayment must be taken as a deduction in the year of repayment. It is this latter aspect of the doctrine which is troublesome to the Court in this action.

Prior to North American Oil the receipt of income in one year and its repayment in another was handled in the same manner as such transactions continue to be handled today when the income is received and repaid all within the same tax year, i. e., the return of the year of receipt was reopened and the amount of income reported therein reduced. E. g., O'Neal v. Commissioner, 18 B.T.A. 1036 (1930); Appeals of Barker, 3 B.T.A. 1180 (1926).

The judicially created claim of right doctrine prohibited the reopening of the return of the year of receipt and made it mandatory that the repayment be taken as a deduction in the year of repayment. Thus it became necessary for the courts to fit the repayment into a deduction allowed by Congress since deductions are matters of legislative grace and cannot be created by the courts. New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440, 54 S.Ct. 788, 78 L.Ed. 1348 (1934). Although taxpayers at times have sought to deduct the repayment as an expense and there is no indication of a disinclination to allow the deduction as such, e. g., Davis v. Commissioner, 17 T.C. 549 (1951); Scioto Provision Co. v. Commissioner, 9 T.C. 439 (1947); the deduction is generally allowed as a loss, e. g., United States v. Lewis, supra; Commissioner of Internal Revenue v. Switlik, 184 F.2d 299 (3rd Cir. 1950); O'Meara v. Commissioner, 8 T.C. 622 (1947); Koppers Co., 3 T.C. 62 (1944); John T. Furlong, 45 B.T.A. 362 (1941), with the nature of the income when received determining whether the loss be capital or ordinary, Arrowsmith v. Commissioner of Internal Revenue, 344 U.S. 6, 73 S.Ct. 71, 97 L.Ed. 6 (1952).

In the Internal Revenue Service ruling discussed above the deduction of the bond interest repayment is allowed as an ordinary loss incurred in a transaction entered into for profit.[1] This ruling appears to the Court to be but the application of the claim of right doctrine to these bond redemptions. The fact that this is a position which the Internal Revenue Service has maintained for over twenty years further weakens the Government's contentions in this action that

---

1. "Accordingly, it is held that the amount of interest thus refunded by a purchaser of such a bond is deductible for Federal income tax purposes as an ordinary loss, incurred in a transaction entered into for profit in the taxable year of such redemption and refund. (Section 23(e) (2) and (f) of the Code)." I.T. 3504, 1941–2 Cum.Bull. 93.

the repayment is voluntary and therefore not entitled to recognition.

This ruling is not dispositive of the present controversy because the special plan of taxation for life insurance companies adopted by Congress in 1921 and applicable as revised to the tax year 1957 makes no provision for any loss deductions, either capital or ordinary.

The plan which Congress enacted in 1921 had as "a major objective the elimination of premium receipts from the field of taxable income," Helvering v. Oregon Mut. Life Ins. Co., 311 U.S. 267, 269, 61 S.Ct. 207, 208, 85 L.Ed. 180 (1940), it having been pointed out to Congress that the major portion of each premium is not true income but is analogous to capital investment, ibid., since it is placed in reserve to be used to meet policy obligations, Royal Highlanders v. Commissioner of Internal Revenue, 138 F.2d 240 (8th Cir. 1943). In accomplishing this objective Congress enacted a plan which taxed life insurance companies only on the basis of their investment income. Helvering v. Oregon Mut. Life Ins. Co., supra.

Under this plan a portion of the income of these companies appears to have escaped taxation since there is an income element to each premium even though the major portion may not be true income. This income element is technically referred to as "loading" and is theoretically computed to cover operating expenses, deviations from expected mortality rates, investment losses and the like, as pointed out by Judge Rogers of the Second Circuit in his able discussion of the nature of the usual level payment life insurance premium in New York Life Ins. Co. v. Edwards, 8 F.2d 851, 852–853 (2d Cir. 1925). Apparently because this income element of premium receipts escaped taxation under the plan adopted, Congress declined to allow deductions which normally would have been offset against it and thereby sharply reduced the deductions allowed in arriving at net investment income.

This basic plan of taxation has remained in effect down through the revenue act governing the tax year in question here. (The Life Insurance Company Tax Act for 1955, Act of March 13, 1956, c. 83, 70 Stat. 36, codified in the 1958 edition of the Internal Revenue Code of 1954.)

Not only does this plan not provide life insurance companies with loss deductions but the only expense deduction which appears available to plaintiff, "Investment Expense," has been so narrowly construed that even interest on money borrowed for the purpose of making investments has been excluded. Service Life Ins. Co. v. United States, 293 F.2d 72 (8th Cir. 1961). If Congress did not intend to include such a normal expense item within this deduction, clearly it did not intend to include such an item as the claim of right deduction presently before the Court.

Plaintiff has attempted to circumvent its inability to take an appropriate deduction under this plan of taxation by (1) offsetting the interest returned in 1957 against other interest received that year through the utilization of the concept of "negative interest," and (2) urging its right to take a deduction under Section 1341 of the 1954 Code, the "Claim of Right" section of Subchapter Q.

Plaintiff has cited no authority where the concept of "negative interest" has been recognized for income tax purposes. The fact that such a concept may be a recognized accounting practice in the life insurance field is not determinative of its applicability to the field of income taxation. In addition, the testimony of Professor Emeritus William A. Paton whose credentials indicate that he is a well qualified authority on accounting procedure raises substantial doubts as to whether the concept should even be utilized for accounting purposes.

Subchapter Q of the 1954 Code is devoted to "Readjustment of Tax Between Years and Special Limitations." Section 1341, entitled "Claim of Right," was added to the Code in 1954. It provides for a return to the pre-North American Oil procedure for handling repayments in excess of a minimum amount.

■ The Court is of the opinion, however, that a condition precedent to the applicability of this section is the ability of the taxpayer to take a deduction in the year of repayment under other provisions of the Code. Although the phraseology of Section 1341 does not necessarily dictate this result, the Court reaches this conclusion for two reasons. First, if this section does create a separate claim of right deduction, this would be such a substantial departure from prior practice as to require at least some indication of this purpose in the legislative history of the section if not more precise language within the section itself. The brief House, Senate and Conference Reports make no mention of any intention to create a new deduction. The purpose of the section as explicitly set out in these reports is to provide some relief from Lewis v. United States, supra, which made it mandatory for the taxpayer to take a deduction in the year of repayment even though the tax benefit to be derived therefrom might be substantially less than the liability incurred from including the returned income in the year of receipt. House Report No. 1337, Senate Report No. 1662, and Conference Report No. 2543 at pp. 4436, 5095, and 5333 respectively of the 1954 U.S.Code Cong. and Adm.News. The question of the inability of the taxpayer to take a deduction in the year of repayment was not before the court in Lewis.

The second reason for the Court's conclusion that Section 1341 does not create a new deduction is that this interpretation, while not dictated by the language used, does less violence to its plain meaning. The section may be diagrammed as follows:

(a) If—

(1) income was included in a prior tax year, *and*

(2) a deduction is allowable in the tax year in question because of its repayment in that year, *and*

(3) such deduction exceeds $3,000, *then* the tax imposed shall be the lesser of—

(4) the tax with the deduction taken, or

(5) the tax without such deduction less the amount of tax paid in the year of receipt attributable to the inclusion of the subsequently returned income.

This conclusion is in accord with the interpretation of the Internal Revenue Service set out in Reg. 1.1341–1:

"If, during the taxable year, the taxpayer is entitled under other provisions of chapter 1 of the Internal Revenue Code of 1954 to a deduction of more than $3,000 because of the restoration to another of an item which was included in the taxpayer's gross income for a prior taxable year (or years) under a claim of right, the tax imposed by chapter 1 of the Internal Revenue Code of 1954 for the taxable year shall be the tax provided in paragraph (b) of this section."

■ As a result of the foregoing analysis of Section 1341 and the Code provisions dealing with the taxation of life insurance companies, the Court concludes that plaintiff is unable to take a claim of right deduction in the year of repayment.

Thus, the Court is faced with another harsh application of the claim of right doctrine. Section 1341 seems to have substantially eliminated the inequities with which the doctrine has been applied in most situations. Here, however, is a situation not covered by 1341 which is, theoretically at least, the most inequitable result of all since the taxpayer is not allowed to take any deduction in the year of repayment. A doctrine which is but a rule of administrative convenience, 2 Mertens § 12.103, effects a complete bar to recovery. The only other cases which the Court has been able to discover which disallowed any deduction—apart from the

decisions turning on the question of "voluntariness" discussed above—did so on the grounds that allowing the deduction would have the effect of frustrating sharply defined public policy and involved either O.P.A. overcharge repayments, Scioto Provision Co. v. Commissioner, 9 T.C. 439 (1947) or insider short-swing profit repayments under Section 16(b) of the Securities Exchange Act of 1934, Davis v. Commissioner, 17 T.C. 549 (1951); Dempsey v. Commissioner, 10 T.C.M. 936 (1951). These cases are clearly distinguishable from the present. Permitting this plaintiff to receive a tax benefit would not appear to encourage conduct prohibited by sharply defined public policy.

The broad holding in United States v. Lewis, supra, would appear, however, to preclude the granting of full relief in this case. As stated by the Court in Lewis:

"Income taxes must be paid on income received (or accrued) during an annual accounting period. Cf. I.R.C., §§ 41, 42; and see Burnet v. Sanford & Brooks Co., 282 U.S. 359, 363 [51 S.Ct. 150, 75 L.Ed. 383]. The 'claim of right' interpretation of the tax laws has long been used to give finality to that period, and is now deeply rooted in the federal tax system. See cases collected in 2 Mertens, Law of Federal Income Taxation, § 12.103. We see no reason why the Court should depart from this well-settled interpretation merely because it results in an advantage or disadvantage to a taxpayer."

In the absence of a statutory modification it thus appears that the judicially-created claim of right doctrine is deeply rooted in our tax system and may not be departed from because of apparent inequities. Moreover, a reopening of

prior years would appear to be of limited benefit to the taxpayer because of the three year statute of limitations for filing claims. 26 U.S.C.A. § 6511. In Lewis the Supreme Court noted in a footnote:

"It has been suggested that it would be more 'equitable' to reopen respondent's 1944 tax return. While the suggestion might work to the advantage of this taxpayer, it could not be adopted as a general solution because, in many cases, the three-year statute of limitations would preclude recovery. I.R.C. § 322(b)."

A similar suggestion appears in the text of Healy v. Commissioner of Internal Revenue, 345 U.S. 278, 284, 73 S.Ct. 671, 675, 97 L.Ed. 1007 (1953):

"A rule which required that the adjustment be made in the earlier year of receipt instead of the later year of repayment would generally be unfavorable to taxpayers, for the statute of limitations would frequently bar any adjustment of the tax liability for the earlier year."

For taxpayers who are able to take a deduction in the year of repayment Section 1341 helps them over this limitations hurdle. But as pointed out above, Section 1341 is not applicable here.

Since the claim of right doctrine bars any recovery for income received in years prior to 1957 and returned in that year, plaintiff's recovery in this action must be limited to reducing its taxable income for the year 1957 by the difference between interest income on the bonds in question which it received during that year at the 2½% rate and the amount it was entitled to retain at the lower rates established by the redemption value tables. The plaintiff's claim will otherwise be disallowed.

A form of judgment will be submitted accordingly.