**SKELLY OIL COMPANY, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. No. 6181.**

United States District Court
N. D. Oklahoma.

June 2, 1966.

FINDINGS OF FACT, CONCLUSIONS
OF LAW AND DECISION

DAUGHERTY, District Judge.

This case has been submitted to the Court for decision on the merits on a Joint Stipulation of Facts and the briefs of both parties.

### ISSUE

The issue for determination herein is stated alternatively in the Joint Stipulation of Facts as follows:

"The only issue presented to this Court for decision herein is whether, in computing plaintiff's liability for federal income tax for the taxable year ending December 31, 1958 under the provisions of Section 1341(a) (4) of the 1954 Internal Revenue Code, it was proper to reduce its otherwise allowable percentage depletion for the taxable year by $139,022.55 representing 27½ percent of $505,536.54, the purchase price received by it from the sale of natural gas during prior taxable years, which purchase price had been included by it in gross income for such prior taxable years under a claim of right without restriction as to use, and which it was required to restore to the payors thereof during the taxable year ending December 31, 1958; or, in the alternative, whether plaintiff is required to reduce its otherwise allowable deduction under Section 1341 (a) (4) of $505,536.54 by 27½ percent, or $139,022.55, to reflect percentage depletion previously claimed and allowed thereon in its federal income tax returns for the years in which such amount was taken into gross income under a claim of right without restriction as to use."

### FINDINGS OF FACT

The following Findings of Fact are pertinent to the issue and are made herein:

1. This action is brought for the recovery of $96,809.82, representing Fed-

Donald P. Moyers, of Martin, Logan, Moyers, Martin & Conway, Tulsa, Okl., Clark, Carr & Ellis and Robert J. Casey, New York City, for plaintiff.

Lawrence A. McSoud, Asst. U. S. Atty., Tulsa, Okl., Robert L. Waters, Dept. of Justice, Fort Worth, Tex., for defendant.

eral income tax collected from plaintiff for the taxable year ended December 31, 1958, or such further amount, if any, as may be legally refundable together with statutory interest thereon.

2. (a) At all times, material hereto, plaintiff was an independent producer of natural gas, engaged in the sale thereof pursuant to rates established or approved by the Oklahoma Corporation Commission and/or the Federal Power Commission. As such, it owned and operated certain oil and gas leases in the Guymon-Hugoton Gas Field located in the States of Kansas, Oklahoma, and Texas (hereafter referred to as the Hugoton Field).

(b) Under gas purchase contracts dated August 28, 1945, plaintiff commenced making sales of gas produced from certain of its interests in the Hugoton Field in Texas County, Oklahoma to Cities Service Gas Company (hereafter referred to as Cities Service).

(c) Immediately prior to August 1, 1952, the price being paid by Cities Service to plaintiff pursuant to these agreements for all gathered and wellhead gas purchases was 8.4863 cents per Mcf when computed on a pressure base of 14.65 psia (per square inch absolute).

(d) In addition to the August 28, 1945 gas purchase contracts, plaintiff sold and delivered natural gas to Cities Service at the wellhead under certain joint operating agreements covering other of plaintiff's interests in the Hugoton Field in Texas County, Oklahoma, where Cities Service was denominated as the Gas Operator.

(e) Immediately prior to August 1, 1952, the price being paid by Cities Service to plaintiff pursuant to such joint operating agreements for the gas sold and delivered thereunder was 8.9329 cents per Mcf (14.65 psia).

(f) On July 29, 1952 the Corporation Commission of the State of Oklahoma, by Order effective August 1, 1952, determined that no gas could be produced from any well in the Hugoton Field, Texas County, Oklahoma, except at a price not less than 9.8262 per Mcf (14.65 psia) if sold at the wellhead, or, if not sold at the wellhead, at a price equivalent to not less than 9.8262 cents per Mcf (14.65 psia) plus the reasonable cost of gathering.

(g) On and after the effective date of this Order, plaintiff was required to charge, and did charge, and Cities Service was required to pay, and did pay, an additional 1.3399 cents per Mcf (14.65 psia) for sales and purchases under the joint operating agreements.

3. (a) On March 20, 1958, the Supreme Court of Oklahoma, pursuant to Mandate of the Supreme Court of the United States in the proceeding Michigan-Wisconsin Pipeline Co. et al. v. Corporation Commission of Oklahoma, 355 U.S. 425, 78 S.Ct. 409, 2 L.Ed.2d 412 (1958), issued an Order and Mandate, vacating the Oklahoma Minimum Price Order in its entirety. On March 27, 1958, the Supreme Court of the State of Oklahoma issued a similar order vacating the Oklahoma Minimum Price Order in its entirety in the proceeding commenced by Cities Service which was then pending before it on stipulation.

(b) On or about April 8, 1958, Cities Service filed a complaint in the Superior Court of New Castle County, Delaware, (Civil Action No. 370), wherein it alleged that plaintiff was indebted to it in the principal sum of $777,853.25, representing alleged overcharges for gas purchased from plaintiff by Cities Service during the period commencing August 1, 1952 through and including December 22, 1957. As the basis for its complaint, Cities Service alleged that during the aforesaid period it had made purchases from plaintiff of natural gas in the Hugoton Field, paying the minimum price required by the Oklahoma Minimum Price Order, and further alleged that the invalidation of this Order ab initio by the Oklahoma Supreme Court entitled it to a refund of all amounts in excess of the amounts which it was contractually obligated to pay to plaintiff during the period commencing August

1, 1952 through and including December 22, 1957.

(c) On September 10, 1958, Cities Service proposed to plaintiff a compromise settlement agreement with respect to such litigation, wherein it agreed to terminate the controversy upon the payment by plaintiff to Cities Service of the sum of $500,000.00. This proposal was conditioned upon the acceptance by the Federal Power Commission of certain amendments to the gas purchase contracts of August 28, 1945. Plaintiff accepted and agreed to this settlement on October 6, 1958.

(d) On November 5, 1958, the Federal Power Commission formally accepted the aforementioned amendments to the 1945 contracts between the parties.

(e) Concurrent with such acceptance, plaintiff was required to refund and repay to Cities Service the aggregate amount of $500,000 in settlement of the litigation commenced against it by said Cities Service.

(f) On December 8, 1958, by order of the Superior Court of New Castle County, Delaware, Cities Service, Civil Action No. 370 was dismissed upon stipulation of the parties with prejudice.

(g) The entire $500,000.00 which plaintiff was required to restore to Cities Service during the taxable year had been included in plaintiff's gross income for federal income tax purposes during the taxable years 1952 through 1957, inclusive, because plaintiff had an unrestricted right thereto in the following amounts:

| Taxable year ended December 31 | Amount Included in Plaintiff's Gross Income |
| --- | --- |
| 1957 | $ 67,668.17 |
| 1956 | 93,094.52 |
| 1955 | 93,018.88 |
| 1954 | 120,064.70 |
| 1953 | 91,972.49 |
| 1952 | 34,181.24 |
| | $500,000.00 |

The above stated amounts were included in plaintiff's gross income from the property in each of the respective years for the purposes of computing plaintiff's depletion allowance therefrom at the rate of 27½ percent, pursuant to the provisions of Section 613, Internal Revenue Code of 1954, and said amounts before the depletion allowances were taken were included in gross income in each of such respective years. In determining plaintiff's taxable income for each of such respective years, upon which federal income taxes were assessed and paid, said percentage depletion which was claimed and allowed at the rate of 27½ percent of the above stated amounts, and other deductions, was deducted from the amounts included in plaintiff's gross income as above stated.

4. (a) In addition to the operating interests set forth above, plaintiff owned certain other mineral interests in the Hugoton Field, which were operated for it by the Dorchester Corporation (hereinafter referred to as Dorchester).

(b) At all times, material hereto, Dorchester was an independent producer of natural gas in Oklahoma. On July 1, 1954, Dorchester commenced sales of natural gas for plaintiff's account to Natural Gas Pipeline Company of America (hereinafter referred to as Natural) at 9.8262 cents per Mcf (14.65 psia), the then existing minimum price established by the Oklahoma Corporation Commission's Order of July 29, 1952.

(c) Commencing July 1, 1954, Dorchester collected and paid over to plaintiff 9.8262 cents per Mcf (14.65 psia) on account of all gas sold by it to Natural from plaintiff's interests.

(d) As the result of litigation commenced by Natural, and as the result of the invalidation of the Oklahoma Minimum Price Order, as more fully set forth above, it was ultimately determined that the proper contractual price for natural gas sold and delivered by Dorchester to Natural from July 1, 1954 was 6.253 cents per Mcf (14.65 psia).

(e) Accordingly, Dorchester was required to refund to Natural all charges in excess of 6.253 cents per Mcf for gas

sold by it to Natural, including gas sold by it as Operator for plaintiff's account.

(f) On September 26, 1958, Dorchester by formal notice demanded reimbursement from plaintiff of so much of the overcharge as was attributable to plaintiff's interest, or $5,536.54, stating in part:

"We must, of course, now recover from you the overpayment just as Natural is recovering it from us. There is no question of our legal right to do this, for the United States Court of Appeals has in effect ruled that we should have been paid at the contract rate all along by Natural, and in turn payments to your interest should have been made at the contract rate."

(g) On October 22, 1958, plaintiff restored and refunded to Dorchester the entire $5,536.54.

(h) The entire $5,536.54 which plaintiff was required to restore to Dorchester during the taxable year had been included in plaintiff's gross income for federal income tax purposes during the taxable years 1954 through 1957, inclusive, because plaintiff had an unrestricted right thereto, in the following amounts:

| Taxable Year Ended December 31 | Amount Included In Plaintiff's Gross Income |
| --- | --- |
| 1957 | $1,276.07 |
| 1956 | 1,406.23 |
| 1955 | 1,810.53 |
| 1954 | 1,043.71 |
| | $5,536.54 |

The above stated amounts were included in plaintiff's gross income from the property in each of the respective years for the purposes of computing plaintiff's depletion allowance therefrom at the rate of 27½ percent, pursuant to the provisions of Section 613, Internal Revenue Code of 1954, and said amounts before the depletion allowances were taken were included in gross income in each of such respective years. In determining plaintiff's taxable income for each of such respective years, upon which federal income taxes were assessed and paid, said percentage depletion which was claimed and allowed at the rate of 27½ percent of the above stated amounts, and other deductions, was deducted from the amounts included in plaintiff's gross income as above stated.

5. In its Federal income tax return for the taxable year 1958, plaintiff deducted the entire $505,536.54 which it was required to restore and repay to both Cities Service and Dorchester in such year. Upon audit by the Government certain adjustments were made to plaintiff's income for the taxable year 1958, including the reduction of its otherwise allowable percentage depletion allowance for such taxable year in the amount of $139,022.55, representing 27½ percent of the $505,536.54 which it was required to restore and repay to Cities Service and Dorchester during the taxable year 1958. These adjustments resulted in an additional assessment of tax for the taxable year, which was paid by plaintiff, together with interest thereon. Thereupon, plaintiff filed a timely claim for refund of such tax on the grounds that its otherwise allowable percentage depletion allowance for the taxable year had been erroneously reduced by 27½ percent of the amount which it was required to restore and repay to both Cities Service and Dorchester. This claim was not allowed, and the instant suit for refund was timely commenced.

6. The meaning of Title 26, United States Code, Section 1341, is not clear when applied to the issue herein.

7. At all times pertinent hereto, plaintiff has kept its books and filed its Federal income tax returns on the accrual basis, utilizing a calendar year.

8. Completely apart from the issue herein the defendant has stipulated that plaintiff is entitled to judgment for recovery of tax related to other similar matters in the amount of $17,468.76, plus assessed interest in the amount of

$3,463.88, a total of $20,932.64, plus statutory interest thereon, as provided by law, from the respective dates of payment of July 5, 1962, with respect to the tax, and September 4, 1962, with respect to the interest assessed thereon.

## CONCLUSIONS OF LAW

1. (a) The Court has jurisdiction of this action under 28 U.S.C. § 1346(a) (1).

(b) The plaintiff has paid the tax in full for the taxable period involved herein.

(c) The plaintiff has made a timely claim for refund. Sections 7422(a), 6511(b) (1) of the Internal Revenue Code of 1954.

(d) More than six months have expired since the filing of plaintiff's claim for refund and plaintiff brings this timely action for its taxable year ended December 31, 1958 pursuant to the provisions of Section 6532(a) of the Internal Revenue Code of 1954.

2. No action or suit has been commenced or is pending in any other Court on account of this claim for refund. Plaintiff is the owner of such claim for refund, and no assignment or transfer of legal title thereto has been made.

3. Plaintiff, at all times pertinent hereto, was a corporation duly organized and existing under the laws of the State of Delaware and maintained its principal office in Tulsa, Oklahoma.

4. An interpretation is required of Title 26, United States Code, Section 1341, which in pertinent parts reads as follows:

"Sec. 1341. COMPUTATION OF TAX WHERE TAXPAYER RESTORES SUBSTANTIAL AMOUNT HELD UNDER CLAIM OF RIGHT.

(a) General Rule.—if—

(1) an item was included in gross income for a prior taxable year (or years) because it appeared that the taxpayer had an unrestricted right to such item;

(2) a deduction is allowable for the taxable year because it was established after the close of such prior taxable year (or years) that the taxpayer did not have an unrestricted right to such item or to a portion of such item; and

(3) the amount of such deduction exceeds $3,000, then the tax imposed by this chapter for the taxable year shall be the lesser of the following:

(4) the tax for the taxable year computed with such deduction; or

(5) an amount equal to—

(A) the tax for the taxable year computed without such deduction, minus

(B) the decrease in tax under this chapter (or the corresponding provisions of prior revenue laws) for the prior taxable year (or years) which would result solely from the exclusion of such item (or portion thereof) from gross income for such prior taxable year (or years)."

5. The parties have stipulated that the computation of tax liability herein should be under Section 1341(a) (4) and not (a) (5). This is because the tax rate herein would be 52% in all events.

6. The general purpose of Section 1341 is to allow a taxpayer who has included certain income under a claim of right in his gross income for a prior year to receive adequate and fair tax benefits in the year in which the taxpayer has been required to restore or repay such income. This purpose is set forth by the said enactment of Congress in general terms without specific provisions being made for all types of income. Thus, it becomes necessary to interpret Section 1341 and ascertain the intent of Congress when it is applied as herein to income included in gross income which possesses the right to a depletion allowance to be thereafter taken and the subsequent deduction which is to be allowed in the taxable year when such income must be restored or repaid.

7. General rules of statutory construction apply to the construction of tax statutes. Where the meaning of a statute is clear, the statute must be en-

forced as written. United States v. Martin, 337 F.2d 171 (Eighth Cir. 1964).

■ 8. Where court is in doubt as to meaning of statute, it is entitled to look to purpose behind it. Stanley v. C. I. R., 338 F.2d 434 (Ninth Cir. 1964).

■ 9. It is well settled that legislative history, generally speaking, may be resorted to as an aid in determining the proper construction of a statute which is ambiguous or of doubtful meaning. Annot: 70 A.L.R. 5.

■ 10. In the interpretation of statutes, the function of the courts is to construe the language so as to give effect to the intent of Congress. There is no invariable rule for the discovery of that intention. To take a few words from their context and with them thus isolated to attempt to determine their meaning, certainly would not contribute greatly to the discovery of the purpose of the draftsmen of a statute, particularly in a law drawn to meet many needs of a major occupation. United States v. American Trucking Associations, 310 U.S. 534, 60 S.Ct. 1059, 84 L.Ed. 1345 (1940).

■ 11. The most persuasive evidence of the purpose of a statute is the words by which the Congress undertook to give expression to its wishes. If these words are sufficient in and of themselves to determine the purpose of the legislation their plain meaning should be followed. However, when this meaning leads to absurd or futile results the Court must look beyond the words to the purpose of the act. If the plain meaning does not produce an absurd result but merely an unreasonable one plainly at variance with the policy of the legislation as a whole the Court should follow that purpose, rather than the literal words. When aid to construction of the meaning of words as used in the statute, is available, there certainly can be no "rule of law" which forbids its use, however clear the words may appear on "superficial examination". The interpretation of the meaning of statutes, as applied to justiciable controversies, is exclusively a judicial function. Emphasis should be laid upon the necessity for appraisal of the purposes as a whole of Congress in analyzing the meaning of clauses or sections of general acts. A few words of general connotation appearing in the text of statutes should not be given a wide meaning, contrary to a settled policy except when a different purpose is plainly shown. United States v. American Trucking Associations, supra.

12. Section 1341 did not create a new deduction but was enacted to provide relief from the ruling in United States v. Lewis, 340 U.S. 590, 71 S.Ct. 522, 95 L.Ed. 560, which held it mandatory that the taxpayer take a deduction in the year of repayment even though the tax benefit to be derived therefrom might be substantially less than the liability incurred from including the returned income in the year of receipt. National Life & Accident Insurance Company v. United States, D.C., 244 F.Supp. 135.

■ 13. It is concluded that it was the intent of Congress that if an item (income) included in gross income by a taxpayer per Section 1341(a) (1) was to thereafter be subject to a depletion allowance for tax purposes that if such taxpayer was in a later tax year to be allowed a deduction thereof per Section 1341(a) (2), the deduction allowable would also be subject to the same treatment and be reduced by the depletion allowance previously effected for tax purposes. O'Meara v. Commissioner, 8 T.C. 622.

14. It is therefore proper that the deduction to be allowed herein for tax year 1958 under Section 1341(a) (2) would be in the amount of $366,513.99, and not the entire $505,536.54. The taxpayer received the $505,536.54, in money and restored or repaid that identical sum. However, the taxpayer only paid tax on 72½% thereof or on the amount of $366,513.99, and such amount in the intent of Congress and in the spirit of the legislation should be the deduction allowable in 1958 under Section 1341. Any other procedure would do violence

to the spirit of the legislation and the intent of the Congress to afford equitable relief to a taxpayer who thought he had a right to keep certain of his income and paid taxes thereon but it later turns out that he had no such right and was required to restore or repay the same. Congress intended that a taxpayer should get at least equal tax benefit but cannot have intended that a taxpayer should get a deduction allowable for income on which he had not previously paid a tax because of some benefit accruing to the specific income such as a depletion allowance. National and O'Meara, supra.

15. By this procedure the taxpayer herein will get tax benefits in 1958 equal to taxes paid during the preceding years regarding this restored income. This is deemed to be the prime intent of Congress as expressed in the enactment involved herein. H. Rep. No. 1337, 83d Cong., 2d Sess., p. 86 (3 U.S.C.Cong. & Adm.News (1954) pp. 4017, 4113); S. Rep. No. 1622, 83d Cong., 2d Sess., 118 (3 U.S.C.Cong. & Adm.News (1954) pp. 4621, 4751).

16. As the defendant is in no way reopening or readjusting plaintiff's returns for the years 1952–1957, there is no violation of the annual accounting concept. Arrowsmith v. Commissioner, 344 U.S. 6, 73 S.Ct. 71, 97 L.Ed. 6 (1952); Douglas v. Commissioner, 322 U.S. 275, 64 S.Ct. 988, 88 L.Ed. 1271 (1944).

### DECISION

It is the decision, therefore, of the Court for the foregoing reasons that the plaintiff should receive nothing herein except that per stipulation herein the plaintiff should recover judgment herein in the sum of $20,932.64 plus statutory interest thereon against the defendant herein.

The defendant will prepare an appropriate judgment based on the foregoing for signature of the Court. Rule 58, F.R.Civ.P. 28 U.S.C.A.