## ARROWSMITH ET AL., EXECUTORS, ET AL. *v.* COMMISSIONER OF INTERNAL REVENUE.

No. 51.   Argued October 24, 1952.—Decided November 10, 1952.

*George R. Sherriff* argued the cause for petitioners. With him on the brief was *Joseph C. Woodle.*

*Helen Goodner* argued the cause for respondent. With her on the brief were *Acting Solicitor General Stern, Assistant Attorney General Lyon, Philip Elman, Ellis N. Slack* and *Harry Baum.*

Briefs of *amici curiae* supporting petitioners were filed by *Norman D. Keller* for Edgar J. Kaufmann; and by *John W. Burke.*

MR. JUSTICE BLACK delivered the opinion of the Court.

This is an income tax controversy growing out of the following facts as shown by findings of the Tax Court. In 1937 two taxpayers, petitioners here, decided to liquidate and divide the proceeds of a corporation in which they had equal stock ownership.* Partial distributions made in 1937, 1938, and 1939 were followed by a final one in 1940. Petitioners reported the profits obtained from this transaction, classifying them as capital gains. They thereby paid less income tax than would have been required had the income been attributed to ordinary business transactions for profit. About the propriety of these 1937–1940 returns, there is no dispute. But in 1944 a judgment was rendered against the old corporation and against Frederick R. Bauer, individually. The two taxpayers were required to and did pay the judgment for the corporation, of whose assets they were transferees. See *Phillips-Jones Corp.* v. *Parmley,* 302 U. S. 233, 235–236. Cf. I. R. C., § 311 (a). Classifying the loss as an ordinary business one, each took a tax deduction for 100% of the amount paid. Treatment of the loss as a capital one would have allowed deduction of a much smaller amount. See I. R. C., § 117 (b), (d) (2) and (e). The Commis-

---

*At dissolution the corporate stock was owned by Frederick P. Bauer and the executor of Davenport Pogue's estate. The parties here now are Pogue's widow, Bauer's widow, and the executor of Bauer's estate.

sioner viewed the 1944 payment as part of the original liquidation transaction requiring classification as a capital loss, just as the taxpayers had treated the original dividends as capital gains. Disagreeing with the Commissioner the Tax Court classified the 1944 payment as an ordinary business loss. 15 T. C. 876. Disagreeing with the Tax Court the Court of Appeals reversed, treating the loss as "capital." 193 F. 2d 734. This latter holding conflicts with the Third Circuit's holding in *Commissioner v. Switlik,* 184 F. 2d 299. Because of this conflict, we granted certiorari. 343 U. S. 976.

I. R. C., § 23 (g) treats losses from sales or exchanges of capital assets as "capital losses" and I. R. C., § 115 (c) requires that liquidation distributions be treated as exchanges. The losses here fall squarely within the definition of "capital losses" contained in these sections. Taxpayers were required to pay the judgment because of liability imposed on them as transferees of liquidation distribution assets. And it is plain that their liability as transferees was not based on any ordinary business transaction of theirs apart from the liquidation proceedings. It is not even denied that had this judgment been paid after liquidation, but during the year 1940, the losses would have been properly treated as capital ones. For payment during 1940 would simply have reduced the amount of capital gains taxpayers received during that year.

It is contended, however, that this payment which would have been a capital transaction in 1940 was transformed into an ordinary business transaction in 1944 because of the well-established principle that each taxable year is a separate unit for tax accounting purposes. *United States* v. *Lewis,* 340 U. S. 590; *North American Oil* v. *Burnet,* 286 U. S. 417. But this principle is not breached by considering all the 1937–1944 liquidation transaction events in order properly to classify the nature

of the 1944 loss for tax purposes. Such an examination is not an attempt to reopen and readjust the 1937 to 1940 tax returns, an action that would be inconsistent with the annual tax accounting principle.

The petitioner Bauer's executor presents an argument for reversal which applies to Bauer alone. He was liable not only by reason of being a transferee of the corporate assets. He was also held liable jointly with the original corporation, on findings that he had secretly profited because of a breach of his fiduciary relationship to the judgment creditor. *Trounstine* v. *Bauer, Pogue & Co.,* 44 F. Supp. 767, 773; 144 F. 2d 379, 382. The judgment was against both Bauer and the corporation. For this reason it is contended that the nature of Bauer's tax deduction should be considered on the basis of his liability as an individual who sustained a loss in an ordinary business transaction for profit. We agree with the Court of Appeals that this contention should not be sustained. While there was a liability against him in both capacities, the individual judgment against him was for the whole amount. His payment of only half the judgment indicates that both he and the other transferee were paying in their capacities as such. We see no reason for giving Bauer a preferred tax position.

*Affirmed.*

MR. JUSTICE DOUGLAS, dissenting.

I agree with MR. JUSTICE JACKSON that these losses should be treated as ordinary, not capital, losses. There were no capital transactions in the year in which the losses were suffered. Those transactions occurred and were accounted for in earlier years in accord with the established principle that each year is a separate unit for tax accounting purposes. See *United States* v. *Lewis,* 340 U. S. 590. I have not felt, as my dissent in the *Lewis* case indicates, that the law made that an inexora-

ble principle. But if it is the law, we should require observance of it—not merely by taxpayers but by the Government as well. We should force each year to stand on its own footing, whoever may gain or lose from it in a particular case. We impeach that principle when we treat this year's losses as if they diminished last year's gains.

MR. JUSTICE JACKSON, whom MR. JUSTICE FRANK-FURTER joins, dissenting.

This problem arises only because the judgment was rendered in a taxable year subsequent to the liquidation.

Had the liability of the transferor-corporation been reduced to judgment during the taxable year in which liquidation occurred, or prior thereto, this problem, under the tax laws, would not arise. The amount of the judgment rendered against the corporation would have decreased the amount it had available for distribution, which would have reduced the liquidating dividends proportionately and diminished the capital gains taxes assessed against the stockholders. Probably it would also have decreased the corporation's own taxable income.

Congress might have allowed, under such circumstances, tax returns of the prior year to be reopened or readjusted so as to give the same tax results as would have obtained had the liability become known prior to liquidation. Such a solution is foreclosed to us and the alternatives left are to regard the judgment liability fastened by operation of law on the transferee as an ordinary loss for the year of adjudication or to regard it as a capital loss for such year.

This Court simplifies the choice to one of reading the English language, and declares that the losses here come "squarely within" the definition of capital losses contained within two sections of the Internal Revenue

Code. What seems so clear to this Court was not seen at all by the Tax Court, in this case or in earlier consideration of the same issue; nor was it grasped by the Court of Appeals for the Third Circuit. *Commissioner* v. *Switlik,* 184 F. 2d 299 (1950).

I find little aid in the choice of alternatives from arguments based on equities. One enables the taxpayer to deduct the amount of the judgment against his ordinary income which might be taxed as high as 87%, while if the liability had been assessed against the corporation prior to liquidation it would have reduced his capital gain which was taxable at only 25% (now 26%). The consequence may readily be characterized as a windfall (regarding a windfall as anything that is left to a taxpayer after the collector has finished with him).

On the other hand, adoption of the contrary alternative may penalize the taxpayer because of two factors: (1) since capital losses are deductible only against capital gains, plus $1,000, a taxpayer having no net capital gains in the ensuing five years would have no opportunity to deduct anything beyond $5,000; and (2) had the liability been discharged by the corporation, a portion of it would probably in effect have been paid by the Government, since the corporation could have taken it as a deduction, while here the total liability comes out of the pockets of the stockholders.

Solicitude for the revenues is a plausible but treacherous basis upon which to decide a particular tax case. A victory may have implications which in future cases will cost the Treasury more than a defeat. This might be such a case, for anything I know. Suppose that subsequent to liquidation it is found that a corporation has undisclosed claims instead of liabilities and that under applicable state law they may be prosecuted for the benefit of the stockholders. The logic of the Court's decision here, if adhered to, would result in a lesser return to the

Government than if the recoveries were considered ordinary income. Would it be so clear that this is a capital loss if the shoe were on the other foot?

Where the statute is so indecisive and the importance of a particular holding lies in its rational and harmonious relation to the general scheme of the tax law, I think great deference is due the twice-expressed judgment of the Tax Court. In spite of the gelding of *Dobson* v. *Commissioner,* 320 U. S. 489, by the recent revision of the Judicial Code, Act of June 25, 1948, § 36, 62 Stat. 991–992, I still think the Tax Court is a more competent and steady influence toward a systematic body of tax law than our sporadic omnipotence in a field beset with invisible boomerangs. I should reverse, in reliance upon the Tax Court's judgment more, perhaps, than my own.