SKELLY OIL COMPANY, Appellant,

v.

UNITED STATES of America, Appellee.

No. 8822.

United States Court of Appeals
Tenth Circuit.

April 20, 1967.

On Rehearing April 3, 1968.

Robert J. Casey, New York City (Donald P. Moyers, Tulsa, Okl., of counsel, Clark, Carr & Ellis, New York City, and

Martin, Logan, Moyers, Martin & Conway, Tulsa, Okl., with him on the brief), for appellant.

Myron C. Baum, Atty., Dept. of Justice, Washington, D. C. (Mitchell Rogovin, Asst. Atty. Gen., Lee A. Jackson, Melva M. Graney, Loring W. Post, Attys., Dept. of Justice, Washington, D. C., of counsel, John M. Imel, U. S. Atty., and Lawrence A. McSoud, Asst. U. S. Atty., Tulsa, Okl., with him on the brief), for appellee.

Before MURRAH, Chief Judge, and HILL and SETH, Circuit Judges.

SETH, Circuit Judge.

The appellant brought this action for refund of income taxes on the ground that it was entitled in full to a deduction under Section 1341(a) (4) of the Internal Revenue Code of 1954, for refunds to corporations which purchased gas from it made following a price reduction.

The trial court reduced the claimed deduction by the amount of the percentage depletion deduction, and the taxpayer has taken this appeal.

The appellant has been in the business of producing and selling natural gas in Oklahoma for many years, and was so engaged during the period when a state minimum price order for natural gas sales at the wellhead was put into effect. This order raised the price of the gas appellant was selling under preexisting contracts, and continued in effect until it was declared invalid in Michigan Wisconsin Pipe Line Co. v. Corporation Commission of State of Oklahoma, 355 U.S. 425, 78 S.C. 409, 2 L.Ed.2d 412. After the order was terminated, a purchaser of gas from appellant during the period the order was in effect brought a suit to recover from Skelly the difference between the contract rate and the price order rate. This suit was settled by the repayment by appellant to the purchaser of the sum of $500,000.00. Appellant paid another purchaser in a similar position the sum of $5,536.54.

The total of these two amounts was claimed and entered in its return as a deduction in 1958, the year it was paid. This was done pursuant to Section 1341 (a) (4) of the Code of 1954 in that it was established after the close of the prior taxable years that the taxpayer did not have an "unrestricted right" to such "an item" which was included in its gross income because it appeared it had such right for several prior taxable years, 1952 through 1957.

As indicated above, appellant claimed it was entitled to deduct the entire amount of the refunds. The trial court did not allow this amount, but instead reduced it by 27½ per cent which was the percentage appellant had deducted in its returns for the years 1952–57 from its gas sales as depletion.

The statute (Section 1341 of the Internal Revenue Code of 1954) provides in part that:

"(a) General rule—If—

"(1) an item was included in gross income for a prior taxable year (or years) because it appeared that the taxpayer had an unrestricted right to such item;

"(2) a deduction is allowable for the taxable year because it was established after the close of such prior taxable year (or years) that the taxpayer did not have an unrestricted right to such item or to a portion of such item; and

"(3) the amount of such deduction exceeds $3,000,

"then the tax imposed by this chapter for the taxable year shall be the lesser of the following:

"(4) the tax for the taxable year computed with such deduction; or

"(5) an amount equal to—

"(A) the tax for the taxable year computed without such deduction, minus

"(B) the decrease in tax  *  *  * for the prior taxable year  *  *  * which would result solely from the

exclusion of such item * * * from gross income for such prior taxable year * * *."

The parties stipulated in the trial court that appellant's taxes for the year 1958 are to be computed under the above subsection (a) (4).

■■ As to the ground rules, it is apparent that the burden was on the appellant under these circumstances to establish a deduction. Corn Products Refining Co. v. Commissioner of Internal Revenue, 350 U.S. 46, 76 S.Ct. 20, 100 L.Ed. 29. Further as a general proposition a narrow construction is placed on statutory provisions for deductions. United States v. Olympic Radio & Television, Inc., 349 U.S. 232, 75 S.Ct. 733, 99 L.Ed. 1024. The rules as to construction generally are contained in United States v. Allen, 293 F.2d 916 (10th Cir.), and in United States v. American Trucking Ass'ns, Inc., 310 U.S. 534, 60 S.Ct. 1059, 84 L.Ed. 1345.

The taxpayer argues on this appeal that the express wording of the section should be applied, and there are involved at least two separate and distinct tax events each fitting nicely into the statutory language. It also urges that the deduction dollars were without question paid out, and cannot be or should not be traced to their origin in a prior year.

On the other hand the Government argues that Congress could not have intended that such a benefit accrue to the taxpayer, that the several events are related, and one should be used to define the other.

The trial court concluded that the section was not clear, and resort should be had to its legislative history. Also it concluded that the policy of the legislation would not permit the result sought by the taxpayer, it being an unreasonable one. The court concluded that: "Congress intended that a taxpayer should get at least equal tax benefit but cannot have intended that a taxpayer should get a deduction allowable for income on which he had not previously paid a tax

because of some benefit accruing to the specific income such as a depletion allowance. National and O'Meara, supra [National Life & Accident Insurance Company v. United States, D.C., 244 F. Supp. 135; O'Meara v. Commissioner of Internal Revenue, 8 C.C. 622]."

When the facts in the case at bar are set against the bare wording of the statute it appears that the requirements are satisfied to permit a deduction in the full amount. The "item" here considered was included in the "gross income" of the taxpayer during the several years prior to 1958, and it appeared that it had the unrestricted right thereto. Further "a deduction is allowable for the taxable year [1958]" because the facts show that after 1957 the taxpayer did not have the unrestricted right to "a portion of such item," and the amount of the deduction is greater than $3,000.00. Thus the tax for 1958 would be computed with "such deduction." It is apparent that the term "gross income," "exclusion," and "deduction" used in the statute have well defined meanings. The parties stipulated that the $505,536.54 had all been included in the taxpayer's "gross income" for the years 1952–57. Thus if the wording is applied without more, the appellant is entitled to the entire deduction.

Before Section 1341 was enacted, a taxpayer in appellant's position was permitted to deduct the amount of the item restored in the year it was so returned. The "claim of right" doctrine was firmly established by North American Oil Consolidated v. Burnet, 286 U.S. 417, 52 S.Ct. 613, 76 L.Ed. 1197. There was no alternative, however, if any remedy was sought as was held in both United States v. Lewis, 340 U.S. 590, 71 S.Ct. 522, 95 L.Ed. 560, and in Healy v. Commissioner of Internal Revenue, 345 U.S. 278, 73 S.Ct. 671, 97 L.Ed. 1007. There thus existed the possibility that the taxpayer would be benefitted by the deduction over the treatment he would otherwise have received, or that he would be prejudiced. The result was then deter-

mined by a number of factors in the tax computation for the two or more years including the most obvious one—a change in tax rates. Thus the taxpayer in the pre-Section 1341 period was at the mercy of the circumstances with no choice given to him. The above cited cases establishing and refining the "claim of right" rule also reiterated the annual accounting doctrine and asserted it must be applied despite inequities which might arise from it.

For the present consideration it is sufficient to note that before Section 1341 a taxpayer by virtue of the permitted deduction could receive more benefit than the tax originally paid by him upon the "item" which had to be restored. Thus a benefit in the current year was recognized as a possibility, but not limited or related to the tax paid on the item in the previous year. It was then treated as any other deduction for these purposes in the year of restoration.

■ The change in "law" by the statutory enactment of Section 1341, considering the wording alone, was by the addition of the provision in subsection (a) (5) directed to those taxpayers who would suffer a disadvantage by the use of a current year deduction. This prejudice was removed by permitting the recomputation of taxes for the current year without the deduction and then a reduction of the tax so computed by the amount of tax attributable to the use of the restored amount in the earlier year if such a route would result in a lesser tax than would a current year deduction. The alternative recomputation provision appears in subsection (a) (5), and the current year deduction is recognized in (a) (4), as it existed before in a non-statutory form. It must be assumed that Congress had a real purpose in enacting the new remedy in (a) (5), and that it was to afford some needed relief in giving the taxpayer an alternative. There is nothing in the enactment itself to indicate an attempt to change the current year deduction remedy.

Thus it appears that Congress by Section 1341 enacted the existing rule as to current year deductions, and added another and new provision whereby the taxpayer who qualifies can always receive a tax benefit from the deduction at least equal to the tax on the item when added to income, "and may receive a tax benefit of a greater amount." 2 Mertens, Law of Federal Income Taxation 340, ch. 12, § 12.106a (Zimet & Stanley Rev.). Thus it must be concluded that Congress sought to make no change in the current year deduction remedy, but only added the recomputation provision. The statutory enactment may have been precipitated by the strict application of the annual accounting rule in cases such as Healy v. Commissioner of Internal Revenue, 345 U.S. 278, 73 S.Ct. 671, 97 L.Ed. 1007, 14 Oil & Gas Tax Quarterly 70.

The trial court found that the section was unclear or ambiguous, and resorted to the legislative history of the enactment of Section 1341. We do not decide whether or not the resort to the history was proper, or whether the wording is without such ambiguity. The legislative history leads to the same conclusion as does the examination of the preexisting state of the law and the statutory language described above.

The cases permit the examination of transactions taking place in prior years to identify or to characterize transactions in the current year. Arrowsmith v. Commissioner of · Internal Revenue, 344 U.S. 6, 73 S.Ct. 71, 97 L.Ed. 6 (a pre-Section 1341 case), is an example. This may be done without violating the annual accounting principle, and a form of it appears in subsection (a) (5) ; however, we see no reason in the Act to reexamine the prior years' transactions in the case before us. The statute in subsection (a) (4), with which we are here concerned, does not require or indicate in any way that this be done.

The Government places great reliance on O'Meara v. Commissioner of Internal Revenue, 8 T.C. 622, 1947. There the

taxpayer reported as income certain royalties received from oil production. He was later found by a court not to have title to the lease or land and had to repay the amounts received. This factor is an obvious distinction from the case at bar. There the question became whether the taxpayer was entitled to any deduction at all in the current year. See also Parr v. Scofield, 185 F.2d 535 (5th Cir.). The Tax Court in O'Meara held the taxpayer was entitled to a deduction in the current year of the amount repaid less the depletion allowance. The point with which we are here concerned is not developed in the opinion as the court does not indicate how the deduction for depletion should be applied. In any event the subsequent enactment of Section 1341 without stating any conditions or adjustments makes the cited case of doubtful authority.

To apply the rule sought by the Government would require the imposition of a limitation on the use of Section 1341 (a) (4) determined by the amount of taxes paid by appellant in the prior years. There was no limitation or adjustment required in the doctrine expressed in (a) (4) before its enactment, and none is indicated in the statute. There appears to be no relationship established by Congress between (a) (4) and the prior year's computation other than those expressed in the Act, none of which are here pertinent. The Section only requires the tax for the current year to be figured "with such deduction."

■ There is no authority to permit a readjustment of the depletion allowance of the prior years nor may later happenings alter it. Hugoton Production Co. v. United States, 349 F.2d 418, 172 Ct.Cl. 444.

Further there is no indication that the source of the dollars used in the repayment was to be considered before Section 1341(a) (4) nor thereafter, any more than the source of the dollars used for other deductions.

■ Much could be written on the subject of general policy about the result of this application of the statute without a judicial addition of conditions. This is however a specific, narrow statutory provision for a particular set of circumstances, and no broad general policy of Congress is indicated. The words used in the section have a clearly recognized meaning in the tax field, and the whole section is consistent when applied as its words direct. The refund problem and depletion was well recognized at the time of the statutory enactment.

■ The benefit which may accrue to the appellant is large, and thus it is different from previous instances where the benefit was small although well recognized; however, we see no reason to make a distinction based on the amount of money involved to override the statutory provisions. The trial court made no such distinction, but instead indicated that the general principles and the O'Meara case led to an addition of requirements not expressed in the statute. We cannot agree with this either, as the mandate of Congress is clear.

Reversed.

### On Petition for Rehearing

The appellee filed a petition for rehearing which was granted. Additional briefs were submitted and oral argument was heard.

The parties, for better or worse, agreed during the litigation that 26 U.S.C. § 1341(a) (4) was the applicable provision. The case was tried on this basis and so presented to this court.

On rehearing, as well as on the original presentation, the Government urges that the case of O'Meara v. Commissioner, 8 T.C. 622 (1947), is determinative of the issue. The Government also urges that a construction of the section contrary to their position is not in accordance with the "spirit" of the legislation.

■ We are not prepared to rest this decision on the "spirit" of this portion of the statute. The rules of statutory

construction are well established, and we are faced with a clearly worded section which refers to a very narrow point. This is not a provision referring to a matter of broad scope. Under these circumstances we must take it at face value.

The continued reliance by the Government on O'Meara v. Commissioner, 8 T.C. 622 (1947), is of little assistance, but it is understandable. It is obviously part of the pre-statute (1954) case law on this point, but if it did develop any new condition, such a condition was not carried over into the present section of the law. The matter of refunds of this character was well known when the statute was enacted, and we must assume that if Congress intended to create a condition as to the applicability of the section, it would have done so.

The O'Meara case does not purport to define "deductions" or anything else. This term, and the others here concerned, were defined by a myriad of cases where the issue was involved, both before and after O'Meara. Thus O'Meara was obviously part of the case law, but nothing it decided was incorporated in the statute nor influenced the construction of established tax terminology.

As stated in the original opinion, under these circumstances we cannot add a condition to the statute expressly or by a redefinition of terms, although we might wish to do so in view of the results. It is apparent that some remedial steps should be taken, but we cannot do so.

We adhere to our original opinion and disposition of the case.

Reversed.

HILL, Circuit Judge (dissenting).

This is a close and difficult case and one that has caused each member of the panel to burn some midnight oil. After the case was first submitted to us I agreed with my brothers that by a strict interpretation of 26 U.S.C. § 1341(a) (4) appellant was entitled to prevail and the opinion of the court was so written.

Thereafter, and by a unanimous vote, a petition for rehearing was granted and the case was reargued. I then became convinced that our original decision was not correct and that the trial court should be affirmed. Therefore, I must now respectfully dissent.

I believe the trial judge was correct in reasoning that § 1341(a) (4) did not create a new deduction and that thus the O'Meara decision [1] applied in the determination of the deduction allowable. The majority fails to present any reason for divorcing the determination of the deduction from its initiating basis.

The cornerstone of appellant's argument and the position apparently accepted by the majority is that "the statute utilizes interchangeably the phrase 'item included in gross income in prior year' with the term 'deduction.'" It is my contention that these two phrases are not used interchangeably and that a more reasonable interpretation of the statute is that the "deduction" to be allowed may in appropriate situations differ significantly from the item included in gross income. At no time does the majority define "deduction" as it is used in § 1341. It is, however, asserted that "deduction" has a well defined meaning. This can only refer to the meaning developed in pre-1341 cases dealing with the problem of refund of prior "claim of right" income. Indeed the majority recognizes that "the current year deduction is recognized in (a) (4), as it existed before in a non-statutory form." However, the majority's further statement that prior to the enactment of § 1341 "a taxpayer in appellant's position was permitted to deduct the amount of the item restored in the year it was so returned" without any reference to the O'Meara decision is misleading to say the least and is undoubtedly the crucial error in the majority's reasoning. O'Meara is bypassed by my distinguished brothers with the statement that "The point with which we are here concerned is not developed in the opinion as the court does not indicate

---

1. Maurice P. O'Meara, 8 T.C. 622 (1947).

how the deduction for depletion should be applied. In any event the subsequent enactment of Section 1341 without stating any conditions or adjustments makes the cited case of doubtful authority."

To me it is much more reasonable to say that the existence of O'Meara in the case law pre-dating the enactment of § 1341 means that it must be considered as a part of the definition of "deduction" that arises from the case law. Certainly an examination of O'Meara shows that the court considered the problem of the effect of taking a prior depletion deduction on claim of right income which was later returned. The O'Meara case concerned a suit for refund of taxes which had been previously paid by O'Meara on royalties received from certain oil properties which had been acquired by O'Meara by warranty deed. During the years when such income was included O'Meara had taken the allowable depletion allowance on such royalties. Subsequently as a result of litigation O'Meara was held to have had unlawful possession of the mineral properties and was required to pay over all royalties received from such property. On his later return O'Meara deducted the amount so repaid and this deduction was disallowed by the Commissioner. The Tax Court reversed the Commissioner's rule and allowed the deduction,[2] limiting it and reducing it by the amount that O'Meara had previously taken as a depletion allowance.

Concerning the problem of reduction of the allowable deduction the court in O'Meara stated:

"[T]he amount of loss for which petitioner is entitled to the deduction must be limited by the amount of the royalty income reported for tax purposes after deducting for depletion. It makes little difference whether the depletion deduction be viewed as a diminution of income, thereby result-

ing in effect in a reporting by petitioner of only the net amount of 72½% of the royalties received rather than 100%, or whether we recognize that the depletion deduction is permitted to one in the position of the owner of the oil in place or of a depletable interest therein, and that when it developed that petitioner was not the owner the deduction became erroneous, and petitioner is required to include the deducted amount as income in the year when that situation appears; see Douglas v. Commissioner [of Internal Revenue], 322 U.S. 275, [64 S.Ct. 988, 88 L.Ed. 1271]; or whether the adjustment is viewed as required by the statutory definition of basis. Section 113(b) (1) (B), I.R.C. See Virginian Hotel Corp. v. Helvering, 319 U.S. 523 [63 S.Ct. 1260, 87 L.Ed. 1561]. In any event, the net amount of the loss for which petitioner is entitled to take a deduction is the total of the royalties reported less the amount deducted for depletion." O'Meara, supra, at 634–635.

Appellant asserts that only the second of the above mentioned grounds for the reduction is valid; since in the instant case there was no question but that Skelly was at all times the legal owner of the land the O'Meara case is distinguishable and not applicable to the instant case. Apparently the court in O'Meara, however, felt that any of the above three mentioned grounds would be sufficient to uphold the government's argument that the deduction should be reduced by the amount of the depletion deduction previously taken.

I suggest that O'Meara stands for the basic principle that a basis established for gain or loss by the inclusion of income under a claim of right, which income has been the basis for a percentage depletion deduction, must be limited by that

---

**2.** It is interesting to note that in 1341(a) (1) the term "an item included in gross income" is used as a requirement for the application of the statute. This same requirement was established in O'Meara, supra, to be the sole requirement for the establishment of a basis for later gains or losses. As discussed later there is, however, a significant difference between establishing a basis and allowing the full amount as a deduction.

amount of the directly related deduction,[3] and that the reasoning and applicability of the O'Meara decision is just as valid today as it was before the enactment of § 1341. I agree entirely with Judge Daugherty when he states "Any other procedure would do violence to the spirit of the legislation and the intent of the Congress to afford equitable relief to a taxpayer who thought he had a right to keep certain of his income and paid taxes thereon but it later turns out that he had no such right and was required to restore or repay the same. Congress intended that a taxpayer should get at least equal tax benefit but cannot have intended that a taxpayer should get a deduction allowable for income on which he had not previously paid a tax because of some benefit accruing to the specific income such as a depletion allowance." In fact any other position would appear to be totally unreasonable. The resulting effect would be that two measures intended to relieve and benefit the taxpayers can combine to result in a windfall to the taxpayer greatly exceeding the benefit which might result from the separate application of these measures. That such an overall result was intended seems unlikely.

It was argued by appellant that the statement of the court in O'Meara that "the process of establishing a basis for an income item consists * * * of reporting it in the taxpayer's gross income * * *" Id. 8 T.C. at 633, required that no further consideration be given to any depletion deduction taken from said income in the computation of the deduction allowable in the year of the repayment. The Tax Court in making this statement, however, was not considering the problem of the amount of deduction allowable but merely that the government did not have to receive any tax benefit from the inclusion of the income in the return in the prior year. The mere reporting of the item as gross income established a basis. The court, however, did not go on to say that the entire item included in gross income would establish the amount of the basis. This was not considered until the later portion of the opinion quoted above, where the court found that the deduction allowable was not equatable with the total amount included in gross income but was limited by the depletion deduction previously taken. No inconsistency results from saying that the inclusion of an item in gross income establishes a basis for later deductions notwithstanding lack of tax benefit to the government but not allowing a taxpayer to include the entire amount included in gross income as a basis for deduction.

3. A short analysis of the depletion deduction shows its direct relation to the gross income produced from a well and illustrates further why in recognizing a deduction for return of such income cognizance must be given the percentage depletion deduction.

A depletion deduction is allowed a taxpayer whose income results from production from a natural resource. In receiving such income the natural resource is depleted, thus depleting the taxpayer's capital investment. In computing other forms of income, i. e., such as a manufacturer's income, the capital investment of the manufacturer is considered and deducted. Thus in a similar sense a depletion deduction from income received from a natural resource is allowed as a return of the taxpayer's capital. 4 Mertens, § 24.02. Such depletion allowance was originally considered on two grounds, a cost depletion and a discovery depletion.

Both of these depletion allowances had a specific limit upon the total amount of depletion that could be taken; however, these depletion limitations proved somewhat unsatisfactory as they made computation of the depletion difficult. Therefore, a percentage depletion deduction was established whereby the depletion deduction was made a direct function of the amount of income received from the natural resource. 4 Mertens, § 24.04. There is no limitation on the amount of depletion deductions which may be taken over a period of years such as with the cost of depletion or like the depreciation allowance allowed for the equipment used by a manufacturer. It is clear in fact that the total depletion deduction taken from a natural resource could far exceed the total cost of the natural resource. Commissioner of Internal Revenue v. Southwest Exploration Co., 350 U.S. 308, 76 S.Ct. 395, 100 L.Ed. 347.

Consideration of the percentage depletion deduction in determining the deduction allowable under § 1341 does not violate the annual accounting concept as established by Burnet v. Sanford & Brooks Co., 282 U.S. 359, 51 S.Ct. 150, 75 L.Ed. 383, as the consideration of the prior years' returns is only for the purpose of determining the amount of the allowable deduction in the present year's return. There is no reopening or refiguring of prior years' taxes, merely a computation of the present year's taxes. That consideration of the prior years' returns may be made is clearly established by cases such as Arrowsmith v. Commissioner of Internal Revenue, 344 U.S. 6, 73 S.Ct. 71, 97 L.Ed. 6; Douglas v. Commissioner of Internal Revenue, 322 U.S. 275, 64 S.Ct. 988, 88 L.Ed. 1271; and Dobson v. Commissioner of Internal Revenue, 320 U.S. 489, 64 S.Ct. 239, 88 L.Ed. 248. Cases cited by appellant such as Healy v. Commissioner of Internal Revenue, 345 U.S. 278, 73 S.Ct. 671, 97 L.Ed. 1007, concern the taxpayer's proposition that the tax for the prior years be recomputed and that refunds be made from the taxes paid in the prior years. This situation is clearly not the one before us in the instant case. Here, as mentioned above, we are merely determining the amount of the allowable "deduction" in the present taxpaying year. The majority cites the case of Hugoton Production Co. v. United States, 349 F.2d 418, 172 Ct.Cl. 444, as authority for the proposition that consideration may not be given of the prior taxpayer years. The Hugoton case, however, is not direct authority for this proposition. That case involved the determination of the price received by similarly situated producers for pur-

poses of establishing wellhead prices for depletion allowances. In the computation of such prices, the court stated that it could not consider refunds made by such other producers under situations similar to that of the instant case and gave as its reasons for not considering such refunds the annual accounting concept. The court went on to note, however, that such refunds would be reflected in any respect as they were considered in the subsequent years when the repayments were made. It should suffice for the Hugoton case to say that the question considered by the court there was not the question which we are considering in the instant case. One could go on to question, however, whether the application of the annual accounting concept to the situation found in the Hugoton case required the result reached by that court. In any respect it is reasonable to say that consideration of prior depletion deductions allowed in computing a "deduction" allowable under § 1341(a) (4) for a current tax year is not a violation of the annual accounting concept.

In summary, the deduction for refunded claim of right income as originally established by case law and continued by § 1341 was to provide relief for a taxpayer from the application of the strict claim of right doctrine. It is unreasonable to transfer such relief into a windfall for the taxpayer unless such a result is clearly and unavoidably required. A double deduction should not be given unless there is virtually no alternative. Here I believe the more reasonable decision to be to limit appellant's allowable deduction by the amount of percentage depletion deduction previously claimed.