George T. and Ruth A. **KIMBELL**,
Plaintiffs,

v.

**UNITED STATES of America,**
**Defendant.**

Civ. A. No. CA–7–656.

United States District Court,
N. D. Texas,
Wichita Falls Division.
Aug. 17, 1973.

Harold Rogers, Wichita Falls, Tex., for plaintiffs.

William Guild, Dept. of Justice, Washington, D. C., for defendant.

## MEMORANDUM OPINION

ROBERT M. HILL, District Judge.

George T. Kimbell and Ruth A. Kimbell, plaintiffs, have brought this suit against the United States of America pursuant to 28 U.S.C. § 1346(a). Plaintiffs, who are husband and wife, seek a refund of income taxes alleged to have been improperly assessed and collected for their taxable year 1967. The sole issue presented by this suit is whether a payment in settlement of a threatened lawsuit is deductible as an ordinary business expense or as a capital loss.

George Kimbell, the principal taxpayer, has been engaged continuously since 1928 in the business of producing and selling oil and gas. Kimbell testified that he was not in the business of buying and then selling oil and gas leases but was only in the business of acquiring the working interest in leases for development of oil and gas. Plaintiffs acquired part of the working interest in two oil and gas leases in Gregg County, Texas. On March 8, 1961, The Elba Corporation bought these two leases, paying a consideration of approximately $840,000. For their interest in these leases plaintiffs received the sum of $216,861 and reported a long-term capital gain of $193,532 to the Internal Revenue Service (IRS) on this transaction.

At the time of this sale there was oil production from these leases. The Elba Corporation and its owner, W. O. Davis, financed the purchase of these leases by obtaining a loan from the Texas Bank and Trust Company of Dallas, Texas. As collateral for the loan the bank obtained a security interest in the oil production from these leases.

In 1962, it was discovered that the wells on these two leases were illegally slanted and production was halted. The Elba Corporation and Davis then defaulted on their loan with the bank. The bank immediately asserted a claim and threatened a lawsuit against plaintiffs in the amount of $1,000,000 on the theory that plaintiffs knew that the wells on these two leases were producing illegally when the leases were sold and that plaintiffs also knew that the bank was financing the purchase of the leases. There then began a series of negotiations between the plaintiffs and the bank which culminated on March 30, 1967 when plaintiffs paid $49,500 to the bank in settlement of all claims then being asserted. Kimbell has at all times denied the validity of the bank's charges.

Kimbell testified that he agreed to settle the threatened lawsuit by the bank because a lawsuit, even though it be without basis, charging him with fraud would have an adverse effect on his reputation and operations in the oil and gas business. In addition, he testified that the settlement resulted in a saving of substantial attorneys fees and court costs which would have been incurred in defending the bank's lawsuit.

On their 1967 joint income tax return plaintiffs deducted the $49,500 payment as an ordinary business expense. Upon audit, the IRS made a determination that the payment was a capital loss and that only fifty percent of that payment was properly deductible. It is from this determination that the present litigation arises.

The fact that a taxpayer pays out money in settlement of a threatened

lawsuit does not always create a business expense deduction. Before such a deduction can be allowed, it must constitute an expense of carrying on the taxpayer's business. In Anchor Coupling Co. v. United States, 427 F.2d 429 (7th Cir. 1970), a taxpayer corporation settled a threatened lawsuit with a payment of $600,000 in order to avoid the adverse effects of the alleged claim upon its business. The district court, relying on the taxpayer's motive, held that the payment was an ordinary business expense. The Court of Appeals reversed the district court, holding that a deductible business expense for settlement of a threatened lawsuit cannot hinge on the taxpayer's motive. Such "elusive" considerations would only "encourage schemes of tax avoidance." 427 F.2d at 433. The court then concluded that the origin of a threatened lawsuit, rather than its consequences on the business reputation of a taxpayer, is the controlling test of whether a settlement payment constitutes a deductible business expense. *Id.* The motive or purpose of a taxpayer does not govern the deductibility of a payment paid in settlement of a threatened lawsuit, rather the more objective test which is premised on the nature of the claim giving rise to the threatened liability. United States v. Gilmore, 372 U.S. 39, 83 S.Ct. 623, 9 L. Ed.2d 570 (1962).

■ It is undisputed that the bank's claim arose from the plaintiffs' sale of the Gregg County oil and gas leases and the bank sought a recoupment of the purchase price paid to the plaintiffs. The nature of the transaction which gave rise to the plaintiffs' alleged liability was an exchange of capital assets. As a result of this exchange the plaintiffs reported $193,532 as a long-term capital gain. Arrowsmith v. Commissioner, 344 U.S. 6, 73 S.Ct. 71, 97 L.Ed.

6 (1952), is clearly applicable to the circumstances in the instant cause.

In *Arrowsmith,* two taxpayers received payments for the liquidation of their corporations. Four years after they reported these payments as capital gains, a judgment was rendered against the corporation. Each of the taxpayers paid half the judgment and deducted 100% of that amount as an ordinary business loss. The Supreme Court held the losses to be capital losses since the taxpayer's liability was not based on any ordinary business transaction apart from the sale of a capital asset. The court then concluded that where a taxpayer receives and reports a capital gain, a subsequent payment made by that taxpayer in satisfaction of a liability arising from the earlier capital transaction must be treated as a capital loss. 344 U.S. at 8, 73 S.Ct. 71. The reason for this rule is that the tax laws will not be interpreted to allow a taxpayer the equivalent of a double deduction. United States v. Skelly Oil Co., 394 U.S. 678, 89 S.Ct. 1379, 22 L.Ed.2d 642 (1969); Mitchell v. Commissioner, 428 F.2d 259 (6th Cir. 1970).

For this court to treat the payment made by plaintiffs in settlement of the bank's threatened lawsuit as an ordinary business expense [1] would clearly give the plaintiffs the equivalent of a double deduction. This court is of the opinion that the payment made by plaintiffs was in effect a repayment of capital gains from the sale of oil and gas leases, and accordingly the payment should be treated as a capital loss rather than a deductible business expense.

The above will serve as this court's finding of facts and conclusions of law and counsel for the government will prepare an appropriate order for entry by the court.

---

[1]. Additionally, the plaintiffs have failed to show that the payment was an "ordinary expense" common to the production of oil and gas, which is the plaintiffs' business.