108 T.C. No. 7


UNITED STATES TAX COURT


MEREDITH CORPORATION & SUBSIDIARIES, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 18248-95.              Filed February 27, 1997.


    P moved for partial summary judgment, claiming
that it is entitled to a $1,555,428 ordinary deduction
in its TYE 1990 stemming from contingent asset
acquisition costs that became fixed in that year, after
the expiration of the useful life of the asset to which
they correspond.  R objected to P's motion and filed a
cross-motion for partial summary judgment, arguing:
(1) the contingent asset acquisition costs were not
attributable to the subscriber relationships asset but
must be allocated to nonamortizable intangibles; and,
in the alternative, (2) the expiration of the useful
life of the subscriber relationships bars any further
cost recovery by P.  Held:  The contingent acquisition
costs at issue are allocable to the basis of the
subscriber relationships in P's TYE 1990.  Meredith
Corp. & Subs. v. Commissioner, 102 T.C. 406 (1994),
followed.  Held, further, P is entitled to an ordinary
deduction in full in its TYE 1990 for contingent asset

acquisition costs incurred in that year, after the underlying asset had been fully amortized.  Arrowsmith v. Commissioner, 344 U.S. 6 (1952) and sec. 1.338(b)-3T, Temporary Income Tax Regs., 51 Fed. Reg. 3592 (Jan. 29, 1986), applied.

James L. Malone III, for petitioner.

Lawrence K. Letkewicz and Jan E. Lamartine, for respondent.

OPINION

NIMS, Judge:  This matter is before the Court on petitioner's motion and respondent's cross-motion for partial summary judgment filed pursuant to Rule 121 on July 26, 1996, and November 8, 1996, respectively.  Petitioner moves for partial summary judgment in its favor, arguing that it is entitled to deduct contingent acquisition costs incurred after the asset to which they pertain has been completely amortized.  Respondent objects to petitioner's motion and also moves for partial summary judgment in her favor, arguing in part that the expiration of the useful life of the asset bars any further cost recovery by petitioner.  For the reasons detailed below, we shall grant petitioner's motion, and deny respondent's cross-motion for partial summary judgment.

Unless otherwise indicated, all Rule references are to the Tax Court Rules of Practice and Procedure.  All section references are to sections of the Internal Revenue Code in effect as of the date of the initial transaction underlying the dispute.

At the time the petition was filed, petitioner's principal place of business was Des Moines, Iowa.

A motion for summary judgment or for partial summary judgment may be granted if no genuine issue of material fact exists and the decision can be rendered as a matter of law.  Rule 121; Sundstrand Corp. & Consol. Subs. v. Commissioner, 98 T.C. 518, 520 (1992), affd. 17 F.3d 965 (7th Cir. 1994); Shiosaki v. Commissioner, 61 T.C. 861, 862-863 (1974).  In their respective Statements of Undisputed Facts, the parties have agreed to fully incorporate the stipulation of facts that is part of the record in Meredith Corp. & Subs. v. Commissioner, 102 T.C. 406 (1994) (Meredith I).  The parties have also agreed to fully incorporate the facts as set forth in the Court's Opinion in Meredith I. This reference incorporates herein the Statements of Undisputed Facts and attached exhibits.  As such, there is no genuine issue of material fact, and this matter is ripe for resolution by means of summary judgment.  We shall repeat the facts as necessary to clarify the ensuing discussion.

## Background

Meredith Corporation (petitioner or Meredith) was organized in 1902.  It is a diversified media company involved in magazine and book publishing, television broadcasting, real estate marketing, franchising, and until recently, printing.  Meredith has continued to expand its operations in the media industry over

the years through internal growth and acquisitions.  Petitioner is an accrual basis taxpayer that keeps its books and records, and files its Federal income tax returns, on a taxable year ending (TYE) June 30th.

In connection with its January 3, 1986, purchase of the magazine Ladies' Home Journal (LHJ), Meredith assumed certain contingent obligations of the seller, Family Media, Inc. (FMI), relating to an intangible asset designated "subscriber relationships".  Meredith agreed to produce and deliver copies of LHJ to subscribers already existent on the acquisition date for the remainder of their subscription terms, necessarily entailing fulfillment costs for which Meredith was to receive no reimbursement from FMI.  Such costs included, but were not limited to, expenses associated with paper, printing, editorial salaries, and delivery (editorial costs).  The fulfillment costs were contingent for two reasons:  (1) The costs were variable; and (2) LHJ subscribers were permitted to request cash refunds for the remaining terms of their subscriptions at any time, for which FMI remained solely liable.  The contingent expenditures at issue herein were editorial costs incurred by Meredith during its TYE 1990.

The years before the Court in Meredith I were petitioner's TYE 1986 and TYE 1987.  Meredith I addressed the issues of petitioner's entitlement to amortization deductions with

respect to three intangible assets acquired in its purchase of LHJ:  (1) A noncompetition agreement; (2) an employment relationship; and (3) the subscriber relationships.

The parties stipulated in Meredith I that the useful life of the subscriber relationships was 42 months.  In addition, the parties stipulated that the actual editorial costs incurred by Meredith through June 30, 1991, stemming from its assumption of FMI's fulfillment obligation, were as follows:

| FYE | Editorial Costs | Present Value Discounted at 14% |
|---|---|---|
| 6/30/86 | $8,324,660 | $8,056,386 |
| 6/30/87 | 7,827,573 | 6,866,292 |
| 6/30/88 | 2,869,118 | 2,207,693 |
| 6/30/89 | 1,462,368 | 987,057 |
| 6/30/90 | 807,267 | 477,967 |
| 6/30/91 | 321,780 | 167,122 |
| | 21,612,766 | 18,762,517 |

On March 14, 1994, this Court issued its Opinion in Meredith I, and on June 16, 1994, a decision was entered.  In the Opinion, we decided that the assumed editorial costs composed part of the purchase price of the subscriber relationships, but that the costs could not be included in petitioner's basis of that asset as of the acquisition date due to their contingency.  Instead, we held that such costs (plus the present value of tax savings resulting from the amortization of such costs) must be added to the "basis of the subscriber relationships in the years in which * * * [they] are incurred".  Meredith Corp. & Subs. v. Commissioner, supra at 455.  The Court then permitted those costs

incurred in petitioner's TYE 1986 and TYE 1987 to be amortized over whatever remained of the stipulated 42-month useful life of the subscriber relationships.  Id. at 462-463.  No appeal was taken from the Court's decision.

On April 9, 1993, Meredith filed a petition in this Court involving the same subscriber relationships issue for its TYE 1988.  Meredith Corp. & Subs. v. Commissioner, docket No. 7166-93 (Meredith II).  Meredith and respondent filed a Joint Motion for Continuance (Joint Motion) in Meredith II since the Meredith I opinion was not anticipated prior to the Meredith II trial date.  In the Joint Motion, the parties stated:

> The amortization issues in the above-captioned case relate to the years subsequent to the year of the initial transaction, 1986, and as such, the parties anticipate that resolution of the amortization issues in the 1986 and 1987 taxable years will form the basis for settlement of the issues in this case.

Meredith II was thereafter settled by the parties, using the exact methodology set forth by the Court in Meredith I.  This Court entered a decision in Meredith II on October 4, 1994.

The same issue arising in Meredith's TYE 1989 was subsequently settled with the IRS Appeals Office in Des Moines, Iowa, applying, without dispute, the identical method used in Meredith I and Meredith II.  In a letter to petitioner dated June 29, 1995, respondent notified Meredith that the Joint Committee on Taxation (Joint Committee) had officially informed her that it

had reviewed and "taken no exception" to the settlement reached by the parties for Meredith's TYE 1989.

Meredith timely filed a Federal income tax return for its TYE 1990 prior to the Court's decision in Meredith I. Based on Meredith I, petitioner later claimed an ordinary deduction for that year of $1,555,428 ($807,267 editorial costs plus tax savings) relating to the acquisition of the subscriber relationships. On August 29, 1995, respondent issued a statutory notice of deficiency to Meredith in which, among other adjustments to income, Meredith's claimed deduction of $1,555,428 for its TYE 1990 was disallowed completely, and a deficiency of $744,852 was determined.

## Discussion

We must adjudge the proper tax treatment for contingent editorial costs and correlated tax savings that were allocable to the basis of the subscriber relationships in Meredith's TYE 1990. The issue of whether these costs should be allocated to the basis of that particular asset was resolved affirmatively in Meredith I. Meredith Corp. & Subs. v. Commissioner, 102 T.C. at 455. However, the subscriber relationships were completely amortized after the end of their stipulated 42-month useful life.

In Meredith I, this Court established a methodology for determining Meredith's tax basis in its subscriber relationships. Critical to this method--and the current imbroglio--was our

conclusion that the fulfillment obligation assumed by Meredith on January 3, 1986, was contingent.

The Court calculated petitioner's initial basis in the subscriber relationships asset as of January 3, 1986, by first finding that its value was $40,300,000 (including value attributed to tax savings). This was determined by using the income approach of petitioner's expert (Grabowski), and by assuming an exclusion during the first 35 months of a portion of the advertising revenues of LHJ attributable to the efforts of the magazine's editor-in-chief (editor advertising exclusion). Using Grabowski's amortization factor of .37634, we calculated this value to be approximately $25,133,500 prior to the addition of tax savings. The Court thereafter decreased this pretax savings figure by the present value of the stipulated editorial costs through June 30, 1991 (approximately $18,762,500) since these costs were contingent, and increased the resulting figure by the present value of the 35 months of the editor advertising exclusion (which we computed to be approximately $2,760,000). We thus found petitioner's initial basis to be $14,641,000, after the addition of tax savings of $5,510,000. Meredith Corp. & Subs. v. Commissioner, supra at 463. The Court reasoned that, to be consistent with the parties' stipulation requiring capitalization of the editorial costs and with the income approach, the proper treatment of the amounts was to charge them against revenues in determining petitioner's initial basis and to

add such amounts to the basis in the years in which they were incurred. <u>Meredith Corp. & Subs. v. Commissioner</u>, <u>supra</u> at 454-455.

Petitioner claims that respondent erred in disallowing the ordinary amortization deduction of $1,555,428 in its TYE 1990, inasmuch as the deduction reflects the portion of the LHJ purchase price and corresponding tax savings attributable to the acquired subscriber relationships for that year. Since the 42-month useful life of the subscriber relationships had expired, Meredith argues that the entire additional purchase price becoming fixed during its TYE 1990 should be deducted in that year in order for it to adequately recover the cost of its investment.

Respondent contends, on the other hand, that Meredith's annual recovery of the total cost of the subscriber relationships must be terminated. Thus, respondent argues that petitioner is not permitted to deduct $1,555,428 in its TYE 1990 and that at least $807,267 (actual editorial costs exclusive of tax benefits) represents a nonamortizable capital expenditure. She proposes June 30, 1989, as the cut-off date for petitioner's recovery of costs, even though not all of the costs of the subscriber relationships had been incurred as of that date. Respondent states in the notice of deficiency:

> The court determined that the subscriber relationships acquired on January 3, 1986 had a useful life of 42 months in <u>Meredith Corp. and Subs. v.</u>

> <u>Commissioner</u>, 102 T.C. 406 (1994). As a result of the
> opinion and as a result of the determination of the
> Commissioner, it has been determined that the deduction
> * * * claimed as an amortization deduction with respect
> to amounts allocated to a subscription list included in
> the intangible assets acquired in the purchase of
> Ladies['] Home Journal, is disallowed in full because
> the amount paid was for non-amortizable intangibles,
> having an indeterminate useful life under Section 167
> of the Internal Revenue Code.

We agree with petitioner. Among other things, respondent misconstrues our holding in <u>Meredith I</u> regarding the contingent nature of all of the editorial costs described above and the resulting impact on petitioner's tax basis in the subscriber relationships. She also disregards general principles of tax law concerning the treatment of contingent asset acquisition costs incurred after an asset has been disposed of or has exceeded its useful life.

<u>I. Meredith I Unequivocally Reasoned That Contingent Editorial
Costs Were To Be Added to the Tax Basis of the Subscriber
Relationships When They Were Incurred</u>

Respondent posits that the post-June 30, 1989, contingent costs do not increase petitioner's basis in the amortizable subscriber relationships, but "instead are allocated to the basis of going concern value or goodwill, neither of which is amortizable". (The underlying transaction occurred prior to the effective date of section 197, as enacted by Omnibus Budget Reconciliation Act of 1993, Pub. L. 103-66, section 13261(a), 107 Stat. 532.)

It is true, as respondent points out, that the allocable purchase price exceeded the fair market value of the acquired tangible and amortizable intangible assets of LHJ. That does not dictate, however, that editorial costs incurred after the expiration of the 42-month useful life must be assigned to nonamortizable goodwill or going concern value. As we stated in Meredith I, "the sole reason why the subscriber relationships are not treated as goodwill is that they can be valued and have a limited useful life which can be estimated with reasonable accuracy". Meredith Corp. & Subs. v. Commissioner, 102 T.C. at 460. The aforementioned editorial costs were found to constitute part of the value of that asset, and not of goodwill. In arguing to the contrary, respondent ignores our rationale in Meredith I that such contingent costs were to be added "to the basis of the subscriber relationships in the years in which such amounts are incurred". Id. at 455 (emphasis added).

The Court initially subtracted from Grabowski's income approach valuation of the subscriber relationships the present value of all of the stipulated editorial costs (including costs incurred during Meredith's TYE 1990 and TYE 1991) due to their contingency, and then prescribed adjustments for TYE 1986 and TYE 1987 based on the actual costs incurred by Meredith in each of those years. Id. at 463. It would be inconsistent with the analysis in Meredith I to deny petitioner an increase in the

basis of its subscriber relationships for the editorial costs and associated tax benefits becoming fixed in its TYE 1990.

II.  Meredith I Does Not Preclude Petitioner's Deduction for Editorial Costs Incurred During Its TYE 1990

Respondent alternatively contends that "Nothing in the Court's Opinion in Meredith I even remotely suggests that Petitioner is entitled to an ordinary deduction [in its TYE 1990]" for additional contingent costs becoming fixed in that year.  Nothing, however, in our Opinion suggests otherwise. Respondent nonetheless claims that "strictly speaking, the Court's Opinion [in Meredith I] precludes the deduction claimed by * * * [Meredith] for the taxable year ended June 30, 1990 * * * [because of the expiration of the stipulated 42-month useful life]".  She cites the following language from Meredith I to support her proposition:

> The amounts are not subject to a new depreciation schedule, but, rather, are to be depreciated over the remaining useful life of the subscriber relationships based on a useful life ending 42 months after the acquisition of the subscribers.  * * *  Meredith Corp. & Subs. v. Commissioner, 102 T.C. at 462-463.

However, the language above is inapposite to Meredith's TYE 1990 at issue in the instant matter.  Placed in context, the words "the amounts" refer to the 1986 and 1987 additions to basis only. The penultimate sentence before the quotation computes dollar amounts for 1986 and 1987.  Moreover, the sentence before the quoted language refers to "these amounts", meaning the 1986 and 1987 sums.

In Meredith I, we reasoned that contingent acquisition costs incurred through TYE 1991 were to be added to the cost basis of the subscriber relationships when they became fixed, and we held only that those costs attributable to Meredith's TYE 1986 and TYE 1987 were amortizable over whatever remained of the 42-month useful life ending June 30, 1989.  We did not address the deductibility of editorial costs incurred in any year after TYE 1987 because such years were not before the Court.

## III. Contingent Acquisition Costs Attributable to Fully Amortized Assets Are Deductible as Incurred

Furthermore, the expiration in mid-1989 of the useful life of the subscriber relationships does not foreclose a deduction for those editorial costs incurred by Meredith during subsequent taxable years.  General tax law principles enounced in regulations and case law provide that contingent asset acquisition costs that become fixed after the relevant asset is fully amortized are deductible as they are incurred.

Section 1.338(b)-3T, Temporary Income Tax Regs., 51 Fed. Reg. 3592 (Jan. 29, 1986), as adopted in T.D. 8072, 1986-1 C.B. 111, concerns the treatment of adjustments to adjusted grossed-up basis (AGUB) for contingent events that occur after the close of a new target's first taxable year in certain stock acquisitions. If an acquisition date asset has been disposed of, or fully depreciated, amortized, or depleted before a contingent amount is taken into account in determining AGUB, the contingent amount

otherwise allocable to such asset is treated "under principles of tax law applicable when part of the cost of an asset (not previously reflected in its basis) is paid after the asset has been disposed of, depreciated, amortized or depleted."  Sec. 1.338(b)-3T(d)(2), Temporary Income Tax Regs., 51 Fed. Reg. 3593 (Jan. 29, 1986).

Section 1.338(b)-3T(j), Example (1)(vi), Temporary Income Tax Regs., 51 Fed. Reg. 3595 (Jan. 29, 1986) considers the disposition of stock (a capital asset) before a liability became fixed and determinable.  Since the stock had been disposed of prior to the contingent liability's becoming fixed, no amount of the increase in AGUB attributable to such asset was allocable to any other asset, including goodwill and going concern value.  See discussion supra pp. 13-14.  Instead, the example directs the taxpayer to deduct the liability as a capital loss under the principles of Arrowsmith v. Commissioner, 344 U.S. 6 (1952).

In Arrowsmith, a corporation liquidated, and its shareholders reported their gain as capital.  In a later year, a judgment was rendered against the former corporation.  The erstwhile shareholders paid the judgment for the corporation because they were transferees of its assets.  They deducted the entire amount paid as an ordinary loss.  However, the Supreme Court determined that the losses that resulted from the payment of the judgment stemmed from a legal obligation arising out of the prior liquidation.  Since the original transaction was a

capital one, the Court held that the related transaction was also capital.  Arrowsmith v. Commissioner, supra at 8.

Respondent gainsays the applicability of the foregoing discussion to the issue herein because, among other reasons, section 1.338(b)-3T, Temporary Income Tax Regs., 51 Fed. Reg. 3592 (Jan. 29, 1986), postdates Meredith's purchase of LHJ's assets, and Arrowsmith does not directly address the deductibility of contingent asset acquisition costs.

We agree with respondent that the regulations and case law are not controlling authority.  Nevertheless, we think the general principles espoused therein comport equally well with the increase in basis of fully amortized subscriber relationships as they do with adjustments to AGUB of fully amortized or disposed assets under section 338.  For present purposes, we descry no reason to distinguish the two situations.

Moreover, these tax law principles antedate petitioner's purchase of the assets of LHJ and are thus appropriately considered by the Court.  The Secretary states:

> These [section 1.338(b)-3T] rules provide for the incorporation of general principles of tax law which are applicable to the determination of the basis of assets acquired in actual asset purchases. * * *
>
>  * * * * * * *
>
> For example, an amount of adjusted grossed-up basis otherwise allocable to a disposed of capital asset may be deducted by new target as a capital loss.  [T.D. 8072, 1986-1 C.B. 111, 114; citation omitted.]

The Secretary cites <u>Arrowsmith v. Commissioner</u>, <u>supra</u>, a case decided well before petitioner's acquisition of LHJ, as authority for that assertion.  See T.D. 8072, <u>supra</u>.

We now apply the preceding analysis to the facts before us.

Meredith is entitled to an increase in the basis of the subscriber relationships due to contingent acquisition costs becoming fixed in its TYE 1990.  The section 338 regulations <u>supra</u> provide a template for petitioner to treat the fully amortized subscriber relationships asset as if it had been disposed of before the increase in basis, and to determine the character of the resulting deduction pursuant to <u>Arrowsmith v. Commissioner</u>, <u>supra</u>.  Since the added basis would have resulted in ordinary amortization deductions if it had been included in the original acquisition cost, we hold that petitioner is entitled to an ordinary deduction in its TYE 1990 of the entire amount of the contingent editorial costs becoming fixed in that year.  See <u>Meredith Corp. & Subs. v. Commissioner</u>, 102 T.C. at 455.

<u>IV.  A Deduction for Contingent Costs Incurred During TYE June 1990 Does Not Result in Excessive Cost Recovery for Petitioner</u>

Finally, respondent contends that, "implicit" in the Court's calculation of petitioner's initial basis in the subscriber relationships in <u>Meredith I</u> is a "maximum" "fair market value [basis] * * * as of January 3, 1986 of $44,725,488" and that since petitioner has already deducted $48,798,243, "over $4

million more than what its initial basis would have been if the Court had not excluded the present value of the assumed editorial costs," any additional deduction is unwarranted.  However, respondent's argument misses the mark.  As discussed earlier, we held that the tax basis of this intangible asset was $14,641,000 as of January 3, 1986 and was to be increased as fulfillment costs were thereafter incurred, through petitioner's TYE 1991. Id. at 455.  What "would have been" if we had decided differently is irrelevant.

Moreover, if we had determined in Meredith I that the editorial costs were not contingent subscriber expenditures, such that the "maximum" tax basis that respondent theorizes in fact applied, Meredith would have been entitled to amortize the entire amount of its editorial costs and associated tax savings through its TYE 1991 over the stipulated 42-month useful life of the asset.  Id. at 445.  The present controversy never would have materialized.  In Meredith I, respondent inveighed against such a result and prevailed.  Respondent cannot have it both ways.

To reflect the foregoing,

An appropriate order granting petitioner's motion for partial summary judgment and denying respondent's

<u>cross-motion for partial summary judgment will be issued</u>.