JERRY M. FELMANN AND MARJORIE L. FELMANN, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 9011–78.      Filed September 10, 1981.

*Bryant R. Burton*, for the petitioners.
*James D. Vandever*, for the respondent.

GOFFE, *Judge*: The Commissioner determined the following deficiencies in the Federal income tax of the petitioners:

| Taxable year | Deficiency |
|---|---|
| 1969 | $4,853 |
| 1970 | 6,810 |
| 1972 | 1,059 |

Due to concessions, the sole issue for our determination is whether petitioners sustained a business or nonbusiness bad debt loss as a result of the worthlessness of an account receivable which petitioner-husband received in a corporate liquidation.

### FINDINGS OF FACT

The facts have been fully stipulated. The stipulation of facts, together with the exhibits attached thereto, is incorporated herein by this reference.

The petitioners timely filed joint Federal income tax returns for their 1969, 1970, and 1972 taxable years. They resided in Los Angeles, Calif., when they filed their petition herein.

In 1970, petitioner Jerry M. Felmann owned 50 percent of the shares of David's Antiques, Inc. The remaining 50 percent of the shares of David's Antiques, Inc., were owned by Richard R. Levinson. David's Antiques, Inc. (hereinafter David's Antiques), was a California corporation, located in San Francisco, Calif., engaged in the business of buying merchandise and antiques from estates and selling antiques to the general public.

Parklane Antique Galleries (hereinafter Parklane) was a California corporation, formed in 1969, owned 30 percent by petitioner Jerry M. Felmann, 30 percent by Richard E. Levinson, and 40 percent by Edward Karr.

In 1969, David's Antiques sold merchandise on credit to Parklane totaling $88,381.77. In exchange for the merchandise, David's Antiques received a trade receivable with a face value of $88,381.77.

On September 29, 1969, substantially all of the merchandise, furniture, fixtures, and equipment of Parklane was destroyed by a fire. After the fire, the only asset owned by Parklane was the claim it had against several fire insurance carriers for recovery of the fire damages.

Richard E. Levinson died on January 29, 1970, and the lessor of the property where David's Antiques was located gave

notice of the fact that there would be no extension of the lease because the property had been sold to make room for a new Hyatt hotel.

On April 30, 1970, David's Antiques was liquidated under the provisions of section 331 of the Internal Revenue Code of 1954.[1] Shortly after the liquidation of David's Antiques, the building in which it did business was demolished and the new hotel was constructed.

Among the assets received by petitioner Jerry Felmann as a result of the liquidation of David's Antiques was the petitioner's 50-percent share of the trade receivable from Parklane (hereinafter referred to as the Parklane receivable). On their 1970 income tax return, the petitioners reported a long-term capital gain from the liquidation transaction in the amount of $191,093. The petitioners' 50-percent share of the Parklane receivable, $44,171 in amount, was included at face value in the petitioners' computation of their gain from the liquidation.

Parklane's insurance carriers resisted Parklane's claim for insurance benefits to compensate it for the 1969 fire loss. On June 5, 1972, the Superior Court of Marin County, in *Commercial Union Insurance Cos., et al. v. David's Antiques, et al.*, No. 53715, ruled that the insurance companies were not obligated to pay any amount to Parklane as a result of the fire.

As a result of the litigation with the insurance companies, the Parklane receivable became worthless in 1972. The petitioners deducted their share of the worthless receivable as a business bad debt in the 1972 taxable year. The deduction of the claimed business bad debt, in the amount of $44,171, created a claimed net operating loss in the amount of $34,856 for the 1972 taxable year. The petitioners applied the claimed net operating loss to the 1969 and 1970 taxable years in the respective amounts of $22,406 and $12,450.

After the liquidation of David's Antiques, the petitioners moved to Beverly Hills, Calif., where, throughout 1972, petitioner Jerry Felmann was engaged in the antique business.

The Commissioner determined that the debt was a nonbusiness one and hence that its worthlessness gave rise to only a

---

[1]All section references are, unless otherwise indicated, to the Internal Revenue Code of 1954 as amended.

short-term capital loss. In the pertinent part of the statutory notice, the Commissioner determined:

(a) The deduction of $44,191 shown on your return as business bad debt resulting from the worthlessness of an account receivable, that you acquired in a corporate liquidation is determined to be a non-business bad debt, which is subject to the capital loss provisions of Section 1211 of the 1954 Internal Revenue Code.

The amount of this non-business bad debt that is allowable in 1972 is indicated in paragraph (b) below. Accordingly, your taxable income is increased $44,191.

## OPINION

To be deductible in full, the bad debt must not be classified as a nonbusiness bad debt. The pertinent portion of section 166 of the Code, as enacted in 1954, is subsection (d)(2) which provided:

(2) NONBUSINESS DEBT DEFINED.—For purposes of paragraph (1), the term "nonbusiness debt" means a debt other than—
    (A) a debt created or acquired (as the case may be) in connection with *a taxpayer's trade or business*; or
    (B) a debt the loss from the worthlessness of which is incurred in the taxpayer's trade or business.
[Emphasis added.]

Congress, in the Technical Amendments Act of 1958, Pub. L. 85–866, 72 Stat. 1606, changed the language of section 166(d)(2)(A) (underscored above) from "a taxpayer's trade or business" to "a trade or business of the taxpayer." The change was to make "it clear that a business bad debt deduction cannot be claimed for a debt which was not originally created or acquired in connection with a trade or business of the taxpayer claiming the deduction." H. Rept. 775, 85th Cong., 1st Sess. (1958), 1958–3 C.B. 811, 819. As stated in the Senate Finance Committee report:

Under the 1939 Code a business-created debt, which became worthless after the taxpayer left the business in which the debt arose, was considered a nonbusiness bad debt. The 1954 Code provided, however, that if either the creation of the debt or its becoming worthless was connected with a taxpayer's business, the loss would be characterized as a business bad debt, and consequently, was fully deductible against ordinary income.

It is possible to argue that a business-created debt would qualify as being fully deductible against ordinary income in the hands of a donee, executor, or transferee who was not, and never had been, engaged in the trade or business in which the debt arose. To preclude this possible result, the House

bill changes the reference to "a taxpayer's trade or business" to "a trade or business of the taxpayer." Your committee has accepted this provision without change. Thus only if the debt was created or acquired in a trade or business of the *particular* taxpayer claiming the loss deduction, and subsequently became worthless, will it be treated as a business loss which is fully deductible against ordinary income. [S. Rept. 1983, 85th Cong., 2d Sess. (1958), 1958–3 C.B. 922, 938–939. Emphasis added.]

It is clear from the legislative history of section 166(d)(2)(A) that petitioners cannot prevail under that subsection because the debt was not originally created in connection with a trade or business of the taxpayer claiming the deduction. The debt was created in connection with the trade or business of David's Antiques, a corporation. Petitioner received a share of the debt owed to David's Antiques when the corporation was liquidated. Therefore, the taxpayers claiming the deduction, petitioners, did not acquire the debt in their trade or business. Nor was it created in connection with the taxpayers' trade or business because it was created by a corporation, which is a taxable entity separate from the taxpayer claiming the deduction. *Deputy v. du Pont*, 308 U.S. 488, 493–494 (1940).

Under section 166(d)(2)(B), the character of the debt is to be determined by the relation which the loss resulting from the debt's becoming worthless bears to the trade or business of the taxpayer. If that relationship is proximate to the conduct of the trade or business in which the taxpayer is engaged at the time the debt becomes worthless, the debt would be classified as a business bad debt. Sec. 1.166–5(b)(2), Income Tax Regs.

In the instant case, the loss on the debt originally owed to David's Antiques, the corporation, is not proximately related to petitioners' present business, an individual proprietorship. The debt is, instead, proximately related to petitioner-husband's role as a shareholder of David's Antiques, which is not in itself a trade or business. *Whipple v. Commissioner*, 373 U.S. 193, 202 (1963). Accordingly, the debt cannot be classified as a business bad debt under the provisions of section 166(d)(2)(B) of the Code.

Petitioners argue that their situation is not unlike those portrayed in examples (*3*) and (*5*) of section 1.166–5(d), Income Tax Regs. The pertinent examples are as follows:

(d) *Examples.* The application of this section may be illustrated by the following examples involving a case where A, an individual who is engaged

in the grocery business and who makes his return on the basis of the calendar year, extends credit to B in 1955 on an open account:

*    *    *    *    *    *    *

*Example (3).* In 1956 A dies, leaving the business, including the accounts receivable, to his son, C, the taxpayer. The claim against B becomes worthless in C's hands in 1957. C's loss is not controlled by the nonbusiness debt provisions. While C does not advance any consideration for the claim, or create or acquire it in connection with his trade or business, the loss is sustained as a proximate incident to the conduct of the trade or business in which he is engaged at the time the debt becomes worthless.

*    *    *    *    *    *    *

*Example (5).* In 1956 A dies; and, while his executor, C, is carrying on the business, the claim against B becomes worthless in 1957. The loss sustained by A's estate is not controlled by the nonbusiness debt provisions. While C does not advance any consideration for the claim on behalf of the estate, or create or acquire it in connection with a trade or business in which the estate is engaged, the loss is sustained as a proximate incident to the conduct of the trade or business in which the estate is engaged at the time the debt becomes worthless.

In examples (*3*) and (*5*), it is true that the persons claiming the bad debt deductions are different taxpayers than the owners of the business when the debt was created. However, in the examples, the business which was operating when the debt was created was conducted as a sole proprietorship and was the same business currently being operated as a sole proprietorship by the son or the executor when the debt became worthless.

In his brief, respondent, for the first time after the mailing of the statutory notice of deficiency, relies upon a new theory based upon *Arrowsmith v. Commissioner*, 344 U.S. 6 (1952). This theory was expressed by the revenue agent when he examined petitioners' income tax return and was propounded again by the appeals officer during a settlement conference prior to the issuance of the statutory notice of deficiency.

Because of our holding above, we need not consider respondent's belated reliance upon *Arrowsmith v. Commissioner, supra,* but neither do we imply that we would be inclined to consider it if we held that petitioners could prevail under section 166.

We accordingly hold that the claim held by petitioner-husband against Parklane was a nonbusiness bad debt when it became worthless in 1972.

*Decision will be entered for the respondent.*