CHARLES I. SCHNEIDERMAN AND ELYSE J. SCHNEIDERMAN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Schneiderman v. Commissioner
Docket No. 8020-86.
United States Tax Court
T.C. Memo 1987-551; 1987 Tax Ct. Memo LEXIS 543; 54 T.C.M. (CCH) 1006; T.C.M. (RIA) 87551; October 29, 1987. Stephen H. Paley and Dennis L. Sharp, for the petitioners. Ruud L. Duvall, for the respondent. KORNER
MEMORANDUM FINDINGS OF FACT AND OPINION KORNER, Judge: In his notice of deficiency respondent determined a $ 19,675 deficiency in petitioners' 1982 Federal income tax. After concessions and the severance of another issue to be decided following a separate trial, the sole issue for decision is how petitioners are entitled to deduct $ 43,409 that they reported as a business bad debt on their 1982 return. The issue was submitted for decision on fully stipulated facts pursuant to Rule 122. [1] The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. *545 FINDINGS OF FACT When they filed their petition herein, petitioners Charles I. Schneiderman ("petitioner") and Elyse J. Schhneiderman ("Elyse") were residents of Potomac, Maryland. They filed a joint Federal income tax return for the year at issue. Petitioner is a physician. He practiced medicine full-time during 1981 and 1982, and he earned nearly $ 190,000 of gross income from his medical practice in 1982. Elyse worked part-time as a career counselor during 1982. In 1981, Arthur Meisnere approached petitioner and convinced him to participate in a business venture to open an art gallery. Meisnere told petitioner that he had experience in running an art gallery. Petitioner and Meisnere formed a corporation named Arthur Charles Gallery, Inc. ("Gallery Inc.") through which to operate the gallery. Gallery Inc. was incorporated in the District of Columbia on September 2, 1981 and opened an art gallery in late 1981 in Washington, D.C. Meisnere served as the president of Gallery Inc., executed its articles of incorporation, and issued its corporate stock. Petitioner served on its board of directors along with Elyse, Meisnere, and Meisnere's wife. Petitioner received no compensation *546 from Gallery Inc. Gallery Inc. obtained funds to operate by securing a series of short-term loans from the Bank of Bethesda. Petitioner had a long-standing relationship with that bank. The loans were evidenced by interest-bearing promissory notes. The loans were obligations of Gallery Inc. and were guaranteed by petitioner, Elyse, Meisnere, and Meisnere's wife. The bank made Gallery Inc. an initial loan in the amount of $ 20,000 on September 2, 1981. On November 12, 1981, the loan was increased to $ 70,000. The promissory note required the $ 70,000, along with interest at the annual rate of 18 percent, to be repaid on January 11, 1982. The loan was increased to $ 80,000 on February 2, 1982, and remained at approximately that amount until November 1982. Gallery Inc. reported its financial position as of December 31, 1981, on its Federal and District of Columbia tax returns, and on its financial statements compiled by its independent certified public accountants. On each of the reports, Gallery Inc. listed its capital structure as of December 31, 1981, as consisting of $ 40,000 of loans from its stockholders bearing interest at the annual rate of 18 percent, $ 375 paid *547 in for common stock, and $ 39,625 paid in as capital surplus. On each of the reports, it reported that it incurred a net loss of $ 25,699 during 1981 and had total assets of only $ 55,501 as of December 31, 1981. None of the reports indicated that Gallery Inc. was indebted to the Bank of Bethesda. Petitioner and Elyse reported on their 1982 joint Federal income tax return that they paid $ 3,732 of interest on a loan to the Bank of Bethesda for the art gallery. The articles of incorporation of Gallery Inc. provided that "the minimum amount of capital with which the corporation shall commence business shall not be less than Ten Thousand Dollars ($ 10,000)." The bylaws of Gallery Inc. provided that no stock certificates were to be issued until the shares had been fully paid for. Meisnere issued petitioner a certificate for 25 1/2 shares of stock of Gallery Inc. on September 2, 1981. The stock certificate was labeled " IRC § 1244 STOCK" and Meisnere assured petitioner that it qualified as such. Gallery Inc. had 75 shares of stock outstanding on December 31, 1981. On June 29, 1982, Meisnere was indicted by a grand jury in Alexandria, Virginia, concerning *548 activity related to Gallery Inc. On August 26, 1982, he pled guilty to perjury and conspiracy to defraud the Internal Revenue Service. On October 29, 1982, he was sentenced to two concurrent two-year terms in prison. With Meisnere unable to run the art gallery, it was necessary for petitioner to wind up the operations of Gallery Inc. On November 16, 1982, the Bank of Bethesda notified petitioner and Elyse that Gallery Inc. was in default on the loan and that a confessed judgment had been entered against them for the balance due, which totaled $ 80,156.14 plus interest. On December 9, 1982, petitioners paid the Bank of Bethesda $ 45,829.19, representing a portion of the confessed judgment. Petitioners deducted $ 43,409 of the payment on their joint Federal income tax return for 1982 as a business bad debt. [2]
Respondent audited petitioners' 1982 return and determined, inter alia, that the $ 43,409 payment was a nonbusiness bad debt which was required to be reflected on the return as a capital loss. Respondent accordingly *549 increased petitioners' income by the $ 43,409 disallowed deduction and decreased petitioners' income by $ 4,603 to reflect the capital loss allowed. [3]
Petitioner's stock in Gallery Inc. became worthless in 1982. OPINION Petitioners argue that part of the loss they realized in 1982 was a loss on section 1244 stock that they are entitled to deduct as an ordinary loss and that the remainder of their loss qualifies as a business bad debt. They argue in the alternative that their loss qualifies as an ordinary and necessary business expense to the extent that it is neither a loss on section 1244 stock nor a business bad debt. We will address each of petitioners' arguments in turn. Section 1244 Stock
The first issue for decision is whether petitioner's Gallery Inc. stock qualifies as section 1244 stock. If it does, petitioners are entitled to deduct a portion of their loss from the worthlessness of the stock *550 as an ordinary loss. Sec. 1244(a). Section 1244(c)(1) defines section 1244 stock. The parties agree that petitioner's Gallery Inc. stock meets two of the three elements of the definition. They dispute whether the stock was issued "for money or other property" as is required by section 1244(c)(1)(B). Respondent argues that the stock was not issued "for money or other property." Petitioner argues that it was. Petitioners bear the burden of proof. Welch v. Helvering,290 U.S. 111, 115 (1933); Rule 142(a). Petitioners do not argue that they contributed any of their own funds to Gallery Inc., other than from the bank loan. They instead ask us to ignore the form of the loans from the Bank of Bethesda to Gallery Inc. and treat the loans as having been made to themselves and Meisnere. According to petitioners, the substance of the loans was that the funds were lent by the bank to petitioner and Meisnere, who then contributed the proceeds to Gallery Inc. as operating capital. Taxpayers have less freedom than the Commissioner to ignore the form of their transactions, *551 and are ordinarily bound by the tax consequences that flow from the form of transactions they use. Selfe v. United States,778 F.2d 769, 773 (11th Cir. 1985); Bolger v. Commissioner,59 T.C. 760, 767 n. 4 (1973). In appropriate circumstances, however, taxpayers may argue that the substance of their transactions, rather than their form, should control the tax consequences of the transactions. Illinois Power Co. v. Commissioner,87 T.C. 1417, 1430 (1986); Glacier State Electric Supply Co. v. Commissioner,80 T.C. 1047, 1053 (1983). Where, as here, taxpayers seek to avoid the tax consequences of the form of a transaction, they must present strong proof that the substance of the transaction was different from its form. Coleman v. Commissioner,87 T.C. 178, 202 (1986), on appeal (3d Cir., Mar. 10, 1987); Illinois Power Co. v. Commissioner, supra at 1434. A loan to a corporation that is guaranteed by a shareholder may, in some circumstances, be treated as a loan to the shareholder followed *552 by a transfer of the loan proceeds from the shareholder to the corporation. Selfe v. Commissioner, supra at 772-775; Plantation Patterns, Inc. v. Commissioner,T.C. Memo. 1970-182, affd. 462 F.2d 712 (5th Cir. 1972), cert. denied 409 U.S. 1076 (1972). Whether debt that is guaranteed by a shareholder is to be treated as an indirect contribution by the shareholder to the corporation is a factual question. Santa Anita Consolidated, Inc. v. Commissioner,50 T.C. 536, 550 (1968). A loan will be deemed to have been made to its guarantors only if the guarantors can show, among other things, that the lender looked primarily to them for repayment. Selfe v. Commissioner, supra at 774; Blum v. Commissioner,59 T.C. 436, 440 (1972). Based on the evidence presented, we cannot reach that conclusion here. Petitioner's affidavit (received in evidence pursuant to the parties' stipulation) suggests that the lender required Gallery Inc. to be the primary obligor on the notes. Petitioners failed to present any evidence, either through their own testimony or testimony from bank employees, that the lender *553 looked primarily to the guarantors for repayment. As we recognized in Blum v. Commissioner, supra, there are potentially many witnesses able to inform this Court as to the circumstances and expectations surrounding loans. We emphasized in that case that we cannot assume that the testimony of absent witnesses would have been favorable to the party with the burden of proof; the normal inference is that their testimony would have been unfavorable. Blum v. Commissioner, supra at 440-441; Wichita Terminal Elevator Co. v. Commissioner,6 T.C. 1158, 1165 (1946), affd. 162 F.2d 513 (10th Cir. 1947). In these circumstances, we conclude that petitioners have failed to present the strong proof necessary to establish that the loans to Gallery Inc. from the Bank of Bethesda were, in substance, made to the guarantors. We accordingly hold that petitioners have failed to prove that petitioner's Gallery Inc. stock qualifies as section 1244 stock, since there is no showing that such stock was issued "for money or other property." Sec. *554 1244(c)(1)(B). Bad Debt
Having concluded that none of petitioners' loss is deductible as a loss on section 1244 stock, we must next decide whether the $ 43,409 at issue is deductible as a nonbusiness bad debt, as respondent determined, or is instead deductible as a business bad debt, as petitioners argue. The loss suffered by petitioners in the discharge of their guarantee is treated as a bad debt incurred by them. Horne v. Commissioner,59 T.C. 319, 335 (1972), affd. 523 F.2d 1363 (9th Cir. 1975), cert. denied 439 U.S. 892 (1978); sec. 1.166-9, Income Tax Regs.To establish that the loss qualifies as a business bad debt, petitioners must prove that the loan was proximately related to petitioner's trade or business. Whipple v. Commissioner,373 U.S. 193, 201 (1963); sec. 1.166-5(b), Income Tax Regs. They have failed to do so. The only relationship petitioners established between petitioner and Gallery Inc. is that petitioner was a shareholder and a director *555 of Gallery Inc. Occupying the status of a shareholder and a director is not in itself a trade or business, nor does the trade or business of the corporation become that of the director or shareholder. Whipple v. Commissioner, supra at 202; Felmann v. Commissioner,77 T.C. 564, 568 (1981). Although serving as an officer or an employee of a corporation can, in some circumstances, constitute a trade or business, there is no evidence that petitioner was an officer or an employee of Gallery Inc. In sum, the only trade or business that it has been established that petitioner was engaged in during the years at issue is the practice of medicine. Petitioners base their alternative argument that their loss is deductible under section 162 on petitioner's active medical practice. They argue that their loss qualifies as an ordinary and necessary expense incurred in connection with petitioner's trade or business of practicing medicine. According to petitioners, they made the payment to ensure the continued financial success of petitioner's medical practice. They argue that they were forced to pay the debt to protect petitioner's ability to obtain loans for *556 use in his medical practice. Petitioners' argument fails because they have simply not produced any evidence that it was necessary for them to pay the loan to protect petitioners' medical practice. The evidence indicates instead that they paid the loan for a more straightforward reason -- a judgment had been obtained against them and they were legally liable to pay it. In sum, we hold that petitioners have failed to prove that respondent erred in determining that they are entitled to deduct the $ 43,409 at issue as a nonbusiness bad debt in accordance with the provisions of section 166(d). To reflect the foregoing, An appropriate order will be issued.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as in effect in the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, except as otherwise noted. ↩
2. The record does not disclose the reason for the $ 2,420.19 difference between the $ 45,829.19 paid by petitioners and their $ 43,409 bad debt deduction. ↩
3. The $ 4,603 decrease reflected the sum of the $ 1,603 capital gain reported by petitioners and the $ 3,000 capital loss allowed by respondent. See sec. 1211(b). ↩