**PURSUANT TO INTERNAL REVENUE CODE SECTION 7463(b),THIS OPINION MAY NOT BE TREATED AS PRECEDENT FOR ANY OTHER CASE.**

T.C. Summary Opinion 2014-11

UNITED STATES TAX COURT

ELIZABETH A. VITARBO, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 24185-10S.                    Filed February 6, 2014.

Elizabeth A. Vitarbo, pro se.

<u>Sharyn M. Ortega</u>, for respondent.

SUMMARY OPINION

CARLUZZO, <u>Special Trial Judge</u>:  This case was heard pursuant to the

provisions of section 7463 of the Internal Revenue Code in effect when the

petition was filed.[1]  Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

In a notice of deficiency dated August 3, 2010 (notice), respondent determined an $18,884 deficiency in, and a $3,776.80 accuracy-related penalty with respect to, petitioner's 2008 Federal income tax.

Respondent now concedes that petitioner is not liable for the accuracy-related penalty.  The issue for decision is whether certain deductions to which petitioner is entitled are properly subtracted from petitioner's gross income in the computation of her adjusted gross income (and claimed on a Schedule C, Profit or Loss From Business), or whether the deductions are properly subtracted from her adjusted gross income in the computation of her taxable income (and claimed on a Schedule A, Itemized Deductions).

## Background

Some of the facts have been stipulated and are so found.  At the time the petition was filed, petitioner resided in Florida.

---

[1]Unless otherwise indicated, subsequent section references are to the Internal Revenue Code of 1986, as amended, in effect for 2008.  Rule references are to the Tax Court Rules of Practice and Procedure.

Petitioner is a licensed and practicing neurosurgeon. On May 5, 2004, following the completion of her residency, petitioner entered into a physician recruitment agreement (agreement) with the Wilson Medical Center in Wilson, North Carolina (WMC). The agreement was intended to induce petitioner to establish a neurosurgery practice in the geographic area that WMC served. In return for her doing so, the agreement provided that: (1) she would be guaranteed a minimum amount of net income; (2) she would be reimbursed, up to a certain amount, for moving expenses; and (3) WMC would pay her student loan debt, again up to a certain amount. The agreement further provided that petitioner would be obligated to repay any amounts she received pursuant to the agreement if she failed to fulfill her obligations. At the time she entered into the agreement she also signed three promissory notes evidencing her debts to WMC arising from payments she received, or would receive, pursuant to the agreement. According to the terms of the agreement, the debts evidenced by the notes were to be forgiven ratably over time if petitioner otherwise fulfilled her obligations under the agreement. The record does not disclose how much petitioner received pursuant to the agreement, but the amount must have been substantial. As a result of the settlement of a lawsuit more fully discussed below, she agreed to repay $240,000 to WMC.

From the onset, it appears that petitioner considered the amounts she received under the agreement as "loans",[2] and nothing in the record suggests that she treated them otherwise for Federal income tax purposes during any of the years those payments were received or paid back.

Petitioner apparently decided to conduct the medical practice contemplated in the agreement through a corporation. On August 16, 2004, petitioner caused articles of incorporation for Wilson Neurosurgical Associates, P.A. (WNA), to be filed with the State of North Carolina. From its inception WNA elected to be taxed pursuant to subchapter S of the Internal Revenue Code.

Petitioner was the sole shareholder of WNA and its only employee. As such, she considered that her obligations under the agreement could be satisfied as an employee of WNA, even though the agreement by its terms was unassignable. As noted, it is unclear how petitioner treated any "guaranteed income" payments she received from WNA during the years before the year in issue. Income otherwise attributable to her medical practice through WNA was apparently

---

[2]During her testimony petitioner referred to the amounts received under the agreement as loans. Respondent apparently agrees with this characterization. In his memorandum brief respondent notes: "In essence, the * * * [agreement] was a personal loan from WMC to the petitioner".

reported as income by WNA.  The compensation petitioner received from 2004 through 2006 as a WNA employee was reported on a Form W-2, Wage and Tax Statement, that WNA issued to petitioner.

WNA was dissolved in 2007.  The Federal tax consequences, if any, of the dissolution are unknown.

Beginning in 2006 and with respect to the year before us, 2008, petitioner conducted her medical practice as an employee of an educational institution.  From what has been submitted it would appear that for Federal income tax purposes petitioner's earnings as a neurosurgeon have consistently been accounted for as wages.  Nothing in the record suggests that for any year before the year in issue petitioner accounted for income earned and expenses paid or incurred in her medical practice on a Schedule C.[3]

At some point during 2006 a dispute between petitioner and WMC arose over the terms of the agreement.  Believing that she had been fraudulently induced to enter into the agreement, petitioner sued WMC seeking certain relief (lawsuit). The lawsuit was settled in November 2007; in accordance with the settlement,

---

[3]It is commonly known that a Schedule C is the form a sole proprietor uses to report income and deductions attributable to the sole proprietorship.

petitioner agreed to repay WMC $240,000. Petitioner's legal fees for the lawsuit totaled approximately $120,000. She paid $60,000 of those fees in 2008. WNA claimed deductions for legal fees paid in 2007 in connection with the lawsuit.

According to petitioner, North Carolina law requires that physicians maintain patient records for a specified period. During 2008 petitioner paid $1,200 to lease a storage unit where she stored the medical records of the patients she treated while practicing medicine as an employee of WNA. Also during 2008, petitioner traveled at her own expense to attend various professional/medical conferences.

Petitioner's 2008 Federal income tax return was prepared by a paid income tax return preparer. Included with petitioner's 2008 return is a Schedule C identifying petitioner's principal business as "MEDICAL SERVICES". The Schedule C shows a net loss of $51,454, which takes into account (1) $15,100 of income, and (2) deductions for the following expenses (disputed deductions):

| Expenses | 2008 |
|---|---|
| Legal fees | $60,000 |
| Rent or lease of other business property | 1,200 |
| Travel | 1,029 |
| Other | 4,325 |

The income is attributable to fees petitioner earned while practicing medicine as an employee of WMC. The deduction for rent is attributable to the cost of the storage unit petitioner used to store patient records. The deduction for travel relates to the costs associated with attending professional conferences. The deduction for other expenses includes: (1) $200 for professional dues and journals; (2) $600 for uniforms; (3) $1,920 for a cell phone; (4) $830 for "AANS" fees; and (5) $775 for registration for the "CNS" annual meeting.

The taxable income shown on petitioner's return is computed with reference to petitioner's election to itemize deductions. See sec. 63(e).

In the notice respondent: (1) disallowed the deductions for rent and travel expenses claimed on the Schedule C; (2) treated the amounts shown on the Schedule C for deductions for legal and "other" expenses as miscellaneous itemized deductions that should be claimed on a Schedule A; and (3) imposed a section 6662(a) accuracy-related penalty on several grounds, including "negligence or disregard of rules or regulations" and "substantial understatement of income tax". Other adjustments made in the notice need not be discussed as the adjustments are computational or have no consequence to the deficiency here in dispute.

## Discussion

As has been noted in countless opinions, deductions are a matter of legislative grace and are allowable only as specifically provided by statute. See INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); Interstate Transit Lines v. Commissioner, 319 U.S. 590, 593 (1943); Deputy v. du Pont, 308 U.S. 488, 493 (1940); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). The taxpayer bears the burden of proof to establish entitlement to any claimed deduction.[4] Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. at 84; New Colonial Ice Co. v. Helvering, 292 U.S. at 440.

Respondent now agrees that petitioner is entitled to the disputed deductions but disagrees with petitioner as to how the disputed deductions are taken into account in the computation of petitioner's taxable income.

According to petitioner, the disputed deductions are all related to her trade or business as a neurosurgeon and are therefore subtracted from her gross income in arriving at adjusted gross income. Under her theory, the disputed deductions are, and were properly claimed on a Schedule C as, allowable under section 162(a). See sec. 62.

---

[4]Petitioner does not claim that the provisions of sec. 7491(a) are applicable, and we proceed as though they are not.

Respondent, on the other hand, takes the position that the disputed deductions are taken into account by subtracting them from petitioner's adjusted gross income. According to respondent, the $60,000 legal expense is allowable as a miscellaneous itemized deduction under section 212(1), and the other disputed deductions are allowable as "trade or business" expenses under section 162(a), but as unreimbursed employee business expenses. See sec. 63(e); Primuth v. Commissioner, 54 T.C. 374, 377-378 (1970).

Before focusing on the merits of the respective positions of the parties, we think it appropriate to clear up petitioner's misconception of respondent's position. Petitioner apparently understands and does not seem to dispute respondent's argument that expenses described in, and otherwise deductible pursuant to section 162(a), as applicable to an employee, or section 212 must be claimed on a Schedule A. Technically speaking, that means the deduction is subtracted from the taxpayer's adjusted gross income in arriving at the taxpayer's taxable income. See sec. 63(d) and (e). Nevertheless, she proceeds as though respondent's treatment of the disputed deductions is based, at least in part, upon her status as an employee of WMC. As petitioner views the matter, respondent is mistaken on the point because she was not during the year in issue, and has never been, an employee of WMC. We agree with her that she was never so employed,

but respondent's position that the deductions are properly claimed on a Schedule A is not premised upon the ground that she was. Instead, respondent points out that petitioner did not practice medicine as a sole proprietor at any time relevant here, and therefore any income or deductions attributable to that practice are not properly reported on a Schedule C. As respondent views the matter, petitioner's status as: (1) an employee/shareholder of WNA from 2004 until her employment with the educational institution began in 2006 and (2) as an employee of that educational institution during 2008, the year the expenses giving rise to the disputed deductions were paid, is taken into account in the determination of the proper treatment of the disputed deductions, not her employment relationship with WMC. As respondent views the matter, all of the disputed deductions are properly claimed on a Schedule A, subject to reductions as provided in section 67(a) and taken into account in the computation of petitioner's alternative minimum tax liability. See sec. 55. For the following reasons, we agree with respondent.

As best we can determine from the record, at the time petitioner signed the agreement she was either unemployed or employed as a resident physician by an organization not disclosed in the record. Following that period of unemployment or employment, she practiced medicine as an employee of WNA, and following that period of employment and continuing through the year in issue she practiced

medicine as an employee of the educational institution that had hired her in 2006. At no time relevant here has she established that she practiced medicine under circumstances other than as an employee or in a manner that required the income and deductions attributable to her medical practice to be shown on a Schedule C.

Because of the positions taken by respondent, other than to note that: (1) section 162(a) allows a taxpayer to deduct ordinary and necessary expenses paid or incurred in carrying on a trade or business and (2) section 212(1) allows a taxpayer to deduct ordinary and necessary expenses paid or incurred for the production of income, we need not discuss the requirements of either of those sections or distinguish between them. Because respondent has conceded that all of the disputed deductions are allowable under one or the other of the above-referenced sections, and because respondent further argues that any of the disputed deductions allowable under section 162(a) are properly treated as deductions for unreimbursed employee business expenses, the distinctions between those sections have no consequence here. Either way, the disputed deductions are properly claimed on a Schedule A.[5]

---

[5]Furthermore, because respondent has conceded that petitioner is entitled to a deduction for the legal fees she paid in connection with the lawsuit, we need not concern ourselves with the nature of that lawsuit, see United States v. Gilmore, 372 U.S. 39 (1963); Kornhauser v. United States, 276 U.S. 145, 153 (1928), or

(continued...)

Section 62(a) provides that the term "adjusted gross income", as used in the relevant provisions of the Internal Revenue Code, means gross income minus deductions for various categories of expenses specifically listed in that section. Trade or business expenses are so listed, but, ignoring exceptions not relevant here, such expenses are included in the reference only if the trade or business of the taxpayer "does not consist of the performance of services by the taxpayer as an employee." Sec. 62(a)(1) and (2). Otherwise, none of the other categories of expenses shown in section 62(a) are applicable here.

An individual performing services as an employee may deduct expenses paid or incurred in the performance of services as an employee as miscellaneous itemized deductions on Schedule A to the extent the expenses exceed 2% of the taxpayer's adjusted gross income. Sec. 67. In general, expenses deductible under section 212 are treated in the same manner. See secs. 62(a)(2), 63(a), (d), 67(a) and (b), 162(a). Itemized deductions may be limited under section 68 and may have alternative minimum tax implications under section 56(b)(1)(A)(i). See Rosato v. Commissioner, T.C. Memo. 2010-39.

---

[5](...continued)
with the characterization of the expenditure, see Arrowsmith v. Commissioner, 344 U.S. 6 (1952).

It follows that the disputed deductions are properly treated as respondent insists, that is, as itemized deductions subtracted from petitioner's adjusted gross income in arriving at her taxable income.  <u>See</u> sec. 63(d)(1).  Stated differently, that means that the disputed deductions are properly claimed on a Schedule A.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.